## DOUGLASS v. VIELE and DOUGLASS.

COMMISSIONERS in partition, who at the same time were admeasuring dower in the same lands under an order of the surrogate, in dividing the lands between three tenants in common, after assigning dower to the widow, allotted the residue to the owners in such manner that two of them took their shares free from dower; the commissioners intending to set off to the third, an infant, the lands subject to dower, with a small parcel besides; and that arrangement was agreed to by one of the owners who was an adult, and by the guardians ad litem, of the two other owners who were infants. By their report of the partition, the commissioners omitted to mention the dower lands, or to allot them to the party intended, but allotted to him merely the small parcel which was free from dower; and the report was confirmed, a judgment entered thereon, and the error was not discovered till nearly thirty years afterwards, the widow having survived all the intervening period. The dower lands added to the small parcel, made that share equal with each of the other shares allotted in the partition.

Held, that the agreement between the adult and the guardians, was invalid, and that the occupation by the two who received their full shares, and the sale of such shares, were not a ratification of such agreement, or an acquiescence in the third owner's right to the dower lands.

Held, further, that on the ground of accident, a court of equity could grant relief, and could give full effect to the defective partition, according to the original design of the commissioners, and the justice of the case.

Albany, January 17; March 19, 1846.

THE bill in this cause was filed, April 4, 1844, by Samuel Douglass against Hannah Viele and Stephen P. W. Douglass, for relief in respect of a parol agreement on the partition of the lands of Samuel Douglass, deceased, the father of the parties, who died intestate on the 14th of December, 1811. The material facts exhibited by the pleadings and proofs, are in part to be found in the opinion of the court, and referring to those, may be briefly stated as follows:

S. Douglass the elder, died seised of about three hundred and eighty acres of land in Pittstown in the county of Rensselaer. His only heirs were Hannah, the wife of Abraham L. Viele, a daughter of his first wife; S. P. W. Douglass, the infant son of the intestate's deceased son William S., who was also a child of his first wife; and the complainant, an infant. The intestate's

widow, the mother of the complainant, subsequently married Mr. Gardner. Early in 1814, an ejectment was commenced in behalf of the infant S. P. W. Douglass, against the tenant of the heirs, to recover about sixty or sixty-two acres of the intestate's lands, known as the east part of Lot No. 120; it being claimed that William S. Douglass died seised of that parcel, and that it descended to his son, and never belonged to the intestate. The cause was tried, and a verdict found for the defendant, on which judgment was entered on the 5th of September, 1814. Prior to this, and on the 8th of November, 1813, the intestate's widow petitioned the surrogate of the county of Rensselaer, to have her dower in the three hundred and eighty acres admeasured; an order was made for the citation of the heirs, and a subsequent order appointing three admeasurers. In the book of minutes of the surrogate, there was entered what purported to be the report of the admeasurers, signed by one of them only. And no other proceedings on the subject, were, on diligent search, to be found in the surrogate's office. It was proved that after 1814, and many years ago, the records and papers of that office, were kept in a most loose, careless and disorderly manner, so that the most valuable documents might have been abstracted from the files, and that many were probably lost through sheer neglect. It appeared by the parol evidence in the cause, that the admeasurers proceeded to set off the widow's dower, and in so doing, made a separate admeasurement of her dower in the sixty or sixty-two acres claimed by S. P. W. Douglass. They set off to her in that tract, eighteen 66-100ths acres, and in the remaining premises of the intestate, they set off to her about eighty acres, for her dower therein. The widow immediately took possession of the lands assigned to her for dower, and continued in possession till the hearing of this cause.

Before the admeasurement took place, and on the 2d of February, 1814, A. L. Viele presented his petition to the Rensselaer Common Pleas, for the partition of the lands of the intestate, omitting the disputed sixty-two acres. In this proceeding, the complainant and S. P. W. Douglass were made parties, and being infants, were represented by their guardians *ad litem*. The same persons who were admeasurers of the dower, were

Douglass v. Viele.

appointed by the court, commissioners to make the partition. The order for partition, directed them to divide the whole premises described in the petition, one-third to each of the infants, and one-third to Viele and wife. They made their report on the 4th of March, 1814, which was confirmed, and judgment was perfected thereon, March 16th, 1814. By their report, they allotted in severalty, by metes and bounds, eighty-five and one-half acres to Viele and wife, one hundred and one and one-half acres to the defendant S. P. W. Douglass, and forty-five and one-half acres to the complainant; and they made no division of the residue which was set off to the widow for dower in the proceeding in the surrogate's court, nor any allusion whatever to that residue, otherwise than by bounding certain parcels by it in the description of the allotments. In their allotments, they gave to the complainant, three separate parcels, all adjoining the widow's dower, and so situated as to be occupied with it as a farm, and they gave him a part of the dwelling house, the residue of which was admeasured to his mother as dower.

A map was introduced in evidence, which was made by one of the commissioners for the purpose and was used on making the partition, which illustrated the several allotments. The same map was used on admeasuring the dower, and exhibited that admeasurement. It was proved abundantly, that the admeasurement of dower and the partition, were made at the same time and in reference to each other. And that the commissioners in their actual allotment and division, had set apart to the complainant the forty-five and one-half acres, and also the eighty acres allotted to his mother for dower, subject to such dower; as being equal to the allotment of one hundred and one and one-half acres to S. P. W. Douglass, and to that of eighty-five and one-half acres to Viele and wife, both of which allotments were exonerated from dower. And that this was done for the reasons, that Viele and wife wanted to sell their share, and to have it free from dower; there was no relationship between the widow and S. P. W. Douglass, which made it desirable or convenient to have the latter's interest connected with or subjected to her's; and the long minority then in prospect for the complainant, would

obviously lead to his residing with the widow for many years, and their identity of feeling, would render his share, if in part subject to her dower, less inconvenient than such an allotment would be to either of the other parties.

On the 1st of November, 1814, Viele and wife sold and conveyed to R. & E. Geer, the eighty-five and one-half acres allotted to them in the partition.

After the termination of S. P. W. Douglass's ejectment, and in the year 1815, the same commissioners proceeded, as if under an order of the court, to make a partition of the parcel of sixty-two acres. They allotted to Viele and wife twenty acres, to S. P. W. Douglass twenty acres, and to the complainant three and one-half acres, leaving as before the widow's dower, (eighteen 66-100ths acres,) in this parcel, unnoticed. It was intended by them as before, that the complainant should have the remainder in the eighteen 66-100ths acres after his mother's death, together with the three and one-half acres, to make him equal with each of the other heirs.

It was proved that on both these partitions, it was expressly agreed, by and between Viele and wife, and the guardians _ad litem_, of the infants, Samuel and Stephen P. W. Douglass, acting in their behalf, that those small allotments should be made to the complainant, so that the other two heirs might have their entire interest in the lands set off to them, free and discharged from dower ; and that the complainant should have the whole of the lands assigned for dower, after the death of his mother. It was also proved that the allotments made to Viele and wife and to S. P. W. Douglass, in the partitions respectively, were each worth full as much as those made to the complainant, including with the latter the value of the lands assigned for dower, subject to the widow's life estate.

There was no record in the court of common pleas, nor any proceeding, relative to the partition of the parcel of 62 acres in 1815. It was however acted upon by the parties. On the 25th of December, 1815, Viele and wife conveyed to the complainant and his mother, their share of the 62 acre parcel. And on the 29th of August, 1828, S. P. W. Douglass conveyed to the complainant, all that share of his grandfather's lands, which on the par-

tition thereof was allotted to him, containing 125 acres. The description in his conveyance was identified as embracing the 20 acres, part of the 62 acres, so allotted to him in 1815, as well as the 101½ acres set off to him in 1814. Previous to this deed, and in 1827, S. P. W. Douglass had executed a mortgage on the premises, in which there was a similar recognition of the partitions. The attorney who conducted the first partition, deposed to his belief that there was a like partition of the sixty two acres, in the common pleas; and there was some testimony corroborating that fact. A. L. Viele died several years ago, and the commissioners who made the partitions, and the two guardians *ad litem* in the partition suit, were also dead. The defect in the complainant's title to the dower lands, was not discovered till a short time before this suit was commenced.

S. P. W. Douglass put in an answer, traversing the agreement made on the partitions, and the other facts on which the complainant claimed the entire dower lands; and insisted upon his right to an undivided third of the same. As to him, the cause was heard on pleadings and proofs. The defendant, Hannah Viele, was proceeded against as a non-resident, and the cause was heard as to her, on a master's report, finding the truth of the facts stated in the bill.

*H. W. Strong*, for the complainant.

*J. Edwards*, and *S. Stevens*, for the defendant Douglass.

THE ASSISTANT VICE-CHANCELLOR.—There is no doubt but that William S. Douglass was of age when he conveyed the east part of lot No. 120, to his father in 1804. The defendant himself recognized the title of Samuel Douglass the elder in this tract, by conveying it in 1828, as allotted to him in the partition of the intestate's lands. It is to be assumed therefore, that when Samuel Douglass died in 1811, he was seised of the premises described in the bill, and containing about 380 acres.

Nor is there any doubt, but that the dower of his widow was admeasured and set off to her at the close of the year 1813. The documentary evidence of this is wanting, in consequence of the

shameful manner in which the records were kept in former times in the surrogate's court in the county of Rensselaer. But the widow has been in possession under that admeasurement more than thirty years, and all the parties in interest have acquiesced in it in such a manner, that they are precluded from questioning it at this day. It appears that the dower was set off in the whole farm, in three distinct parcels. The dower in the east part of lot No. 120, was in one of these parcels, separate from the rest. It also appears that the three admeasurers of dower were the same persons who were the commissioners in partition, and the proof is distinct, that they prepared for and arranged the first partition at the same time that they admeasured the dower, and in connection with it, although the legal proceedings in the partition were not actually commenced.

The record of the partition of all the farm, except the east part of lot 120, is produced from the Rensselaer common pleas. The petition by A. L. Viele, describes the farm, omitting the tract last mentioned. This was caused by the pending ejectment suit for that tract, which had been brought in the name of the defendant Douglass. The allotting a part of that for dower, could injure no one; but embracing it in a partition with other lands, might lead to injustice, if the title proved defective.

The court proceeded to adjudge, (as shown by the record,) that the parties were respectively entitled, each to an undivided third of the lands described in the petition, subject to the right of dower of the widow, and directed a partition to be made accordingly, of the premises described *in the petition,* and appointed commissioners, for that purpose. The report of the commissioners is then introduced and recited. It sets out with a statement that they have *divided the premises, whereof partition is directed,* according to the rights of the parties, and have allotted to each of them the parcels described. And the judgment of the court is then entered, that such partition of the said premises be valid and effectual in the law.

The record discloses the singular fact, that in the allotments therein made by the commissioners, there is an entire omission of eighty acres of the premises described in the petition; and it appears that the omitted eighty acres, were set apart

Douglass v. Viele.

and admeasured to the widow for dower in the other pro-
ceeding. And neither of the allotments made in the partition,
are made subject to dower. The widow's dower is butted
upon,·in the description of one of the allotments, but is not
otherwise referred to. By the partition, eighty-five 56-100ths
acres were allotted to Viele and his wife, for their third part;
one hundred and one and one half acres to the defendant Doug-
lass, and forty-five 53-100ths acres to the complainant. The
two latter were infants, and were both represented in the partition
suit, by their guardian's *ad litem.*

It is satisfactorily proved, that the lands allotted to Viele,
were worth as much by the acre, as those allotted to the com-
plainant; and the part set off to the defendant Douglass, was
worth nearly as much by the acre, and fully equal in aggregate
value to Viele's. Each of the latter allotments was made in two
parcels. The complainant's was made in three parts, and all
adjoining the widow's dower as admeasured, and so situated, as
to be occupied with the dower. Indeed, one part of his allot-
ment *zig zags* around a portion of the dower in such a narrow
belt, that, judging from the map, it could not be used except in
connection with the dower land. A part of a dwelling house is
given to the complainant, the residue of which is allotted to the
widow for dower.

The testimony in the cause proves clearly, how this strange
partition came to be made. The complainant was the infant son
of the widow, while the defendant Douglass was the grandson
of the intestate, descended from a former wife, and Mrs. Viele
was a daughter of the first wife. It was morally certain that
the widow and her son would reside together for many years,
and their occupancy would be joint. Viele and his wife desired
to sell their portion of the farm, and to that end, wanted an al-
lotment free and clear of the dower of the widow. And it was
agreed by all the parties, the guardians acting for the infants,
that the partition should be so made, that the whole interest of the
Viele's and the grandson, should be allotted to them in severalty
freed from the dower, and that the complainant should have in
severalty the lands allotted for dower, subject to his mother's life
estate, and so much more land as would make him equal to his
two co-heirs.

The partition was made on this footing, but unfortunately was not so reported to the court, and was not embraced in the judgment rendered in the suit.

After the termination of the suit for the east part of lot No. 120, the same commissioners made a partition of that tract, under the same agreement, and in the same manner, as the other lands. The tract contained about sixty-two acres. Of this, eighteen 66-100 acres had been set apart for dower, in the proceeding for that purpose. The commissioners then allotted to the Viele's about twenty acres, to the defendant Douglass about twenty acres, and to the complainant about three and one half acres, adjoining the portion set off to his mother for dower.

There is no record evidence to be found of the partition of the sixty-two acres. But it is referred to and adopted, in the deed from Viele and wife on the 25th December, 1815, and in effect, by the defendant Douglass in his mortgage in 1827, and his deed in 1828.

The widow in 1814, was thirty-six years of age. Estimating the value of her life estate in the ninety-eight 66-100 acres assigned to her for dower, it is demonstrable that conceding to the complainant the remainder in fee in severalty in that portion, together with the allotments made to him in the two partitions; he did not receive in the division of his father's estate, as much as either of the other two heirs.

To illustrate this, I will assume that the two hundred and thirty-two 59-100ths acres, divided to the heirs in the first partition, were worth double the eighty acres set apart for dower, in the same portion of the farm; and will estimate the latter at $28, per acre, and the former at $20, which will be near enough for this purpose. The widow's life estate in the eighty acres, was worth on the principle of life annuities, using the Northampton tables and omitting fractions, the sum of $1497. The remainder belonging to the complainant in the eighty acres, would therefore be $743. His forty-five 53-100 acres in fee, at $20, would amount to $912, making his whole share of the land, including the dower, to be $1655.

The eighty-five 56-100 acres allotted to the Viele's, at the same valuation, was worth $1711. And the one hundred and one and

one half acres set off to the defendant Douglass, if valued at only $16, per acre, would be within a few dollars of the complainant's share, dower and all.

It is perfectly obvious, that if these partitions are to stand as made by the commissioners, and the other heirs are to share equally with the complainant in the dower lands, after the death of the widow; most flagrant injustice will be done to the complainant.

This consequence will not, of itself, warrant the interference of the court, unless there be some proper ground for relief, founded upon legal principles. The complainant claims relief upon two grounds, viz.: the agreement at the time of the partition, and the acts of the parties ratifying and confirming it.

*First.* As to the agreement, it will not avail against the defendant, because he was an infant, and his guardian *ad litem* had no authority to contract for him. His subsequent assent to the partition as made, and his action under it, was not an adoption of the agreement; for it does not appear that he so acted, with knowledge of its existence.

Next, as to the ratification and acquiescence. The defendant found certain allotments made to him by a judgment in partition, and he was warranted in availing himself of them, to their full extent. No occasion has arisen for the distinct assertion of his claim to the third part of the land admeasured for dower.

I do not think that either his mortgage or his deed, contain any recognition of the parol agreement, or any waiver of his rights in the dower lands. His conversations relative to the personal estate, and his silence as to a further interest in the farm, in connection with his necessitous circumstances, furnish a strong argument in favor of the presumption that he was conscious he had no further interest in the land, in point of justice and good conscience.

There is another ground, on which I think the complainant may be relieved, without trenching upon the salutary doctrine of the law, that a judgment is conclusive between the parties to it, and cannot be modified collaterally.

The judgment in 1814, is defective on its face ; and there is no question but that the subsequent partition of the sixty-two

acres was like it in all respects.  Not only the direction of the court, but the statute, imperatively required the commissioners to make partition of the whole premises embraced in the interlocutory judgment for partition.  (1 R. L. 509, s. 4.)  Their report shows, that they actually allotted only two hundred and thirty-two acres out of the three hundred and twelve embraced in the petition and judgment, and they neither advert to the dower, or state that the eighty acres are reserved for a future division.

There was a palpable miscarriage in the performance of their duty, owing doubtless to the admeasurement of dower, *pari passu*, which they did not consider was in another court, and could form no part of the record ; and to the parol agreement as to the share of the complainant, which they probably deemed to be valid.  The omission was not brought to the notice of the court, because by the practice in the courts of law, the report of the commissioners is confirmed as of course unless it be opposed, and judgment is entered thereon, *sub silentio*.

I think, considering the infancy of the complainant; the obvious defect in the proceedings of the commissioners as reported to and confirmed by the court of common pleas, (they being for this purpose, officers of the court, and not mere agents of the parties ;) the agreement which led to their miscarriage, and the gross inequality and injustice, which will result from giving full effect to the defective partition irrespective of that agreement ; that this is one of those cases of *accident*, which imperatively calls for the interference of a court of equity.  The difficulties have arisen from acts and omissions, which are not the result of any negligence or misconduct of the complainant, and which unless redressed, must produce events wholly unforeseen when the acts occurred, and which the actors would have most sedulously guarded against, if they had been anticipated.

Without relief here, the complainant must be subjected to an unjustifiable loss, for which he is in no wise responsible, and the other parties will derive an unconscientious advantage from the error or oversight of the commissioners.

It is in vain at this period, to refer him to the court of law. In 1815, that court might have vacated its judgment, and referred the matter back to the commissioners.  But more than

thirty years have elapsed, the commissioners are dead, and a part of the lands divided have been sold and conveyed to strangers. The common pleas could not interfere. It is otherwise in this court, where the more flexible modes of proceeding, enable it to mould its relief, to suit the infinite variety of circumstances which require its interposition.

A decree can be made referring it to a master, to ascertain the relative values of the several allotments set off in these partitions, at the time they were made, and the then value of the widow's life estate in the respective dower lands assigned to her, and the value of the remainder therein on the principle of life annuities. And he should report what sum, if any, the complainant ought to pay to the respective defendants, to make the parties equal, on his retaining the entire remainder in the dower lands, together with the lands specifically allotted to him in the partitions.

And with these provisions, there should be a declaration that the allotments in severalty made by the commissioners, are to remain valid and effectual ; the court assuming to do justice between the parties, in respect of the premises omitted in the partitions.

The lapse of time, which renders it impracticable to have the error redressed in the original suits, does not preclude the complainant from relief in this instance ; because no claim has been made until recently, in hostility to the arrangement between the Viele's and the guardians of the infants, in 1814. Until such a claim was asserted, he had a right to suppose that the arrangement was recognized and acquiesced in by the parties.

The case against Mrs. Viele is fully made out by the master's report on the facts, so as to entitle the complainant to the same decree against her, as I have sketched against the defendant Douglass.

I will direct the entry of a decree accordingly ; reserving all other questions and directions, till the coming in of the master's report.