FREDERICK J. DUGAN
By his Committee,
vs.
JOHN S. HOLLINS AND OTHERS.

} December Term, 1853.

[CONSTRUCTION OF WILL—CONTRIBUTION—LEGACIES.]

A testator by his will, executed in 1832, in order to place his sons upon an equality with his daughters, gave to each a pecuniary legacy to be paid by his executors "by the sale of his bank or other stocks." Held—

That this equality had reference to the state of facts existing at the date of his will, and no subsequent fluctuation in the value of the property which the testator may have previously given his children can influence this bequest, either to diminish or increase it.

A gift of a house to one of his sons subsequently to the date of the will, is not an ademption, *pro tanto*, of the pecuniary legacy given by the will; one of the exceptions to presumptive ademption is where the testamentary provision and the subsequent advancement are not *ejusdem generis*.

These legacies to the sons are payable out of the personal estate alone, and that being insufficient, they have no right to resort to the real estate in the hands of the devisee.

A testator directed "his funeral expenses and debts to be paid out of whatever part of his estate his executors shall think proper." Held—That if this clause confers upon the executors the power to sell the real estate, it only authorizes them to do so for the purpose of paying funeral charges and debts.

The real estate is never charged with the payment of legacies, unless the intention so to charge it is expressly declared, or is fairly and plainly to be inferred from the terms of the will.

A testator declared by his will, that if any claim was made against his estate on account of certain notes drawn by him in favor of his daughters or their husbands, his executors should charge the sums paid by his estate on account thereof to his daughters. These notes the testator paid in his lifetime, and lived more than two years thereafter without changing his will. Held, that the provision made in his will for his daughters could not be diminished on account of the payment of these notes.

At common law upon partition between coparceners there is an implied warranty that if either loses any of his share by eviction, on account of defect of title in the ancestor, the party evicted may enter upon the others and defeat the partition, or by proper proceedings, may obtain recompense for the part lost.

A deed of partition was executed between several parties without covenants, and the portion assigned to one was made responsible for the payment of a decree against the ancestor. Held—That he had a right to call upon the other parties in chancery, to contribute their proportions of the money paid by him in discharge of this decree.

[The facts of this case are sufficiently stated in the Chancellor's opinion, which was delivered on the 26th of January, 1854.]

THE CHANCELLOR:

The proceedings in this case, which are voluminous, need not be recited, the questions in controversy depending upon the proper construction of the will of Cumberland Dugan, deceased, who died on the 1st of November, 1836, and upon the legal effect of certain facts admitted by the parties, as appears by their written agreement.

The testator was twice married, and by his second marriage had four children, to wit, Hammond Dugan, Frederick James Dugan, Rebecca Hollins and Cordelia Margaret Hollins, and with reference to these in the 14th clause of his will, he says: "And whereas, it is my wish and desire, that my four children (naming the above four) shall be placed by me as nearly as possible on an equality in the division of my estate under *this present will*, and under such conveyances, gifts, &c., as I may have made to them respectively, and also having regard to their respective situations ; and whereas, the Washington Cotton Factory, hereinbefore devised, to the use of my two daughters, Rebecca and Cordelia Margaret, was purchased by me for the sum of $27,500, I, therefore, order and direct, that as early after my decease as may be practicable, my executrix and executors shall sell such portions of my bank and other stocks as shall produce the sum of $27,500, and pay therefrom, to my son, Hammond Dugan, the sum of $13,750, and to my son, Frederick James Dugan, the sum of $13,750."

The will was executed on the 5th of October, 1832, and letters testamentary were granted to Margaret Dugan, the widow of the testator, in December, 1836, soon after his death.

These sums not having been paid, the plaintiff in the present bill, among other things, seeks to recover from the daughters of the testator by a sale of the real estate devised to them and their children, first the legacy so bequeathed to him, and secondly, his one-third of the sum bequeathed to his brother Hammond, now deceased.

I concur with the complainant's counsel in thinking that the equality spoken of by the testator, had reference to the state of the fact as it existed at the date of the will, and that any fluctuation in the value of the property, which the testator may have previously given to his children, subsequently to that date, can have no influence upon the bequest. The testator has said, that to place his sons upon an equality with his daughters, there shall be paid to each of the former, the sum of $13,750, to be raised by his executors, by the sale of his bank and other stocks, and I apprehend it would be an unwarrantable assumption of authority in this court to say, that because there has been a change in the value of the property previously given by him to his children, the legacies which in his judgment were necessary to produce equality shall not be paid, or shall be reduced.

If this court would be justifiable in reducing the sums to be paid the sons, because the property previously given by the testator to his children may have appreciated or depreciated in value, it is not seen why it might not *increase* these sums, if such increase should appear to be necessary with reference to the changed value of the property. If present equality is to be attained, and that can only be accomplished by increasing or decreasing the sums to be paid to the sons, it would be difficult to maintain that the court may do the one, but is prohibited from doing the other.

Neither do I think this court is at liberty, for the purpose of reducing the sum to be paid either of the sons, to take into consideration any property which the father may have given them, or either of them, in his life time, between the date of his will and his death, as it is to be presumed if such gift had altered his intention with regard to the pecuniary legacies bequeathed to his sons, he would have made the necessary alteration in his will.

It has not been contended, nor could it be successfully, that the gift of a house to the complainant, by his father in his lifetime, was an ademption, *pro tanto*, of the pecuniary legacy bequeathed him by his will, one of the recognized exceptions to presumptive ademption being where the testamentary provision

and subsequent advancement are not *ejusdem generis.* 1 *Roper on Legacies,* 261.

But though I agree with the complainant in thinking that the amount of the pecuniary legacies bequeathed to him and his brother Hammond, is not to be reduced, because the property previously advanced by him to them may have appreciated in value, subsequent to the date of his will, it does not follow that they have a right to resort to the devisees of the real estate, in case the personalty from any cause should prove inadequate. By the clause in which these legacies are given, the executors are to sell his bank or other stock to raise money for their payment, and no expression is used from which, by implication, the power to sell the real estate can be deduced.

No argument, as I think, in favor of such a power for the purpose of paying these legacies, can be drawn from the second clause of the will, because, however extensive a power over his estate that clause may be supposed to confer upon his executors, its exercise is expressly limited to the duty of paying *his funeral expenses and debts.* Its language is, "as to my worldly estate, which a bountiful providence has been pleased to bestow upon me, I now dispose of the same in manner and form following, that is to say: *Imprimis,* I order and directed my funeral expenses and all my just debts shall be paid out of whatever part of my estate my executrix and executors, or a majority of them, shall think proper." If, therefore, this clause can be regarded as conferring upon the executors the power to dispose of the real estate of the testator, it would seem to be clear that it goes no further than to authorize them to do so for the purpose of paying funeral charges and debts, and can by no possible construction, enlarge the power given them by the 14th section, which limits their authority to the sale of bank or other stock for the payment of the legacies.

The cases are numerous and uniform in this state, and elsewhere, establishing the principle that the real estate is never charged with the payment of legacies unless the intention so to charge is expressly declared, or fairly and plainly to be inferred from the terms of the will. *Stevens* vs. *Gregg,* 10 *Gill & Johns.,*

143, and the cases there referred to. And in that case, it was adjudged, that a legacy of $500 to each of the testator's two grandsons, to be paid by his executor, was not evidence of an intention to charge the real estate in the hands of the devisee with the payment of the legacies, the court in their opinion saying, that the legatees and devisee appear to have been alike the objects of the bounty of the testator, and it not appearing to have been his intention to encumber his lands with the payment of the legacies, and there being no evidence that the executor, who was the devisee of the real estate, had wasted or misapplied the personalty, the legatees were adjudged to have no claim upon the proceeds of the real estate, and, consequently, the personalty being insufficient, they were disappointed.

The case now before this court, it is thought, is not distinguishable in principle from the case referred to. It is the case of a pecuniary legacy not chargeable upon the real estate, and in which the personalty being insufficient, the legatee must bear the loss, having no right to resort to the real estate in the hands of the devisee, who, with himself, is equally the object of the bounty of the testator.

The general rule of marshalling assets, as explained and applied by the Court of Appeals, in the case of *Chase* vs. *Lockerman*, 11 *G. & J.*, 185, furnishes no authority for throwing these legacies upon the real estate devised, or for compelling the devisees to contribute. Other cases were referred to in the argument, but as they simply reaffirm the rule established in *Stevens* vs. *Gregg*, and *Chase* vs. *Lockerman*, it is not thought necessary to cite them.

These views dispose of the first and second claim made by the complainant, and show that, in my opinion, he cannot have recourse to the real estate devised to the testator's two daughters and their children, for the payment of the sums of money bequeathed to him and his brother Hammond Dugan in the 14th clause of the will. These legacies were payable out of the personal estate of the testator, and out of that alone.

The complainant's third claim, as enumerated in his statement filed on the 18th instant, is founded upon the 15th clause

of the will, and the facts in connection with it contained in the agreement filed on the 8th of June, 1853.

In this clause, the testator, after bequeathing to Isaac McKim, upon certain trusts, parcels of goods and chattels contained in a deed of trust previously executed by him to John Smith Hollins, recites that he was security on sundry negotiable notes, drawn by Robert S. Hollins, amounting to about $10,000, more or less, and that his daughters, Rebecca and Cordelia Margaret, or either of them, may hold a note or notes of his, drawn in their favor, or in favor of either of them, says, "now my will and desire is, that the foregoing promissory notes, any, or either of them, is to be no charge whatever on my estate, but that if any claim whatever is made on my estate in respect of said notes, or either of them, so drawn or endorsed by me, then, and in that case, my said daughters, or the one making or occasioning such demand or charge, shall cease to receive and be entitled to receive any share or dividend from my estate so devised to their use respectively, until the said note or notes be entirely released, and all liability of my estate for them, or any part of either of them, respectively, be wholly determined. And should it so happen, that my said estate should be made responsible for any sum whatever, on account of said notes endorsed or drawn by me, for my said daughters, or either of their said husbands, then, and in that case, I order and direct that whatever sum may be paid by my estate on said account, shall be charged by my executrix and executors against my said daughters, or against such one as may have occasioned any such charge on my estate."

It is conceded, that the testator's daughters have made no charge or claim against his estate on account of notes held by them, or either of them, and the statement of facts agreed on, shows that John S. Hollins and Robert S. Hollins, his two sons-in-law, who were partners in business, failed in the year 1833. That Robert S. Hollins applied for the benefit of the insolvent laws in 1834, and was discharged, and that John S. applied and was discharged under said laws in June, 1840, and that Cumberland Dugan, the testator, in his lifetime, filed his claim against the insolvent estate of Robert S. Hollins on account

of payments and advances of said Dugan for him, said Hollins. And the agreement further shows, that the notes endorsed by the testator for the Messrs. Hollins, were from time to time renewed for their accommodation, until the year 1834, when, after their failure, the renewals then maturing were retired, and constitute the vouchers of the claim of the testator filed in the insolvent case of Robert S. Hollins, and that the dividend allowed on this claim, amounting to $910 54, was received by his executrix after his death.

I am of opinion, that it sufficiently appears from the admissions and the proceedings in the cause, that the testator paid the notes endorsed by him for the Messrs. Hollins in his life, in the years 1833 and 1834, and there is not, as I think, any sufficient proof connecting the transaction with the Franklin Bank with the payment in such way as to show that the money to pay the notes, was borrowed from that institution, even if that would make any difference in the law affecting the case, which may be doubted. The notes were certainly paid by Dugan, the testator, in his lifetime, and in respect of such payment, he presented himself as creditor of the insolvent estate of Robert S. Hollins, and it does not appear to me to be material whether he borrowed the money for the purpose from the bank, and that the debt to the bank was paid after his death by his executrix.

Mr. Dugan lived two years after he paid these notes, and made no alteration in his will. Though the language of the 15th clause is in some respects not free from ambiguity, it seems to me very clear, that when the testator speaks of charging his daughters with the sums which may be paid by his estate on account of the notes referred to, he meant sums which might be paid after his death. The charge was to be made by his executors, which would seem to refer to moneys paid by them after his death.

It can scarcely be supposed he intended that his executors should charge his daughters with moneys which he might pay in his lifetime, for them or their husbands, because he was quite competent to do that himself, and no reason exists, or is shown,

12*

why he did not do so if he designed it. The more reasonable presumption is, that seeing his sons-in-laws had failed in their business and become insolvent, he was not disposed to diminish the provision made for his daughters by pressing this charge against them, and this presumption is strengthened by the fact, that after the execution of his will, he paid the sum of $3400 for a house which he gave to the complainant.

I am, therefore, of opinion, that the complainant is not entitled to recover from the defendants any thing on account of payments made by the testator, as security for Robert and John S. Hollins, mentioned in the 15th clause of the will.

The 4th item of claim set up by the complainant, is founded upon the payment by him of a large some of money in discharge of a decree obtained by *John S. Gittings et al* in 1841, under the circumstances stated in the proceedings.

The decree was rendered in 1841, and affirmed on appeal in 1845. By it, Mr. Gittings and others, were held to be entitled to a parcel of property which had been devised by the testator to the two sons of his said two daughters, valued at $11,000, and the defendants in that suit, were decreed to pay a large sum of money on account of the rents and profits of said property. And the facts agreed on, show, that after the decree had been affirmed, and pending subsequent proceedings to make the personal and leasehold property bequeathed by the testator, and then in the possession of the complainant, responsible for the money so due, the complainant, on the 18th of February, 1847, paid the balance due, with costs, and the bill in this case seeks to make the defendants refund to the complainant a portion of this payment.

The proceedings further show, that in the year 1844, a partition was made of certain portions of property which had been conveyed by Margart Dugan and Sarah Moore, to Frederick James Dugan and William McKim, trustee, and by the said Margaret Dugan to the same parties. The property was divided into three equal parts, whereof one-third was assigned to the said Frederick James Dugan, one-third to William M'Kim, trustee of Rebecca Hollins, and the remaining one-third to the

same party in trust for Cordelia M. Hollins, and this partition was by a deed executed interchangeably by Dugan and wife, McKim, the trustee, Rebecca and Cordelia M. Hollins, carried into effect; the parties respectively conveying each to the other according to the assignment of the commissioners appointed to to make the partition. It was the property in fact which was assigned to Frederick James Dugan by this partition, which it was the object of the supplemental proceedings in the case of Gittings and others, to render responsible for the payment of the rents and profits decreed to be paid them.

So far as this item of claim is concerned, it appears to me, the merits as well as the law of the case, are with the complainant. The rule at common law is well settled, that upon a partition between coparceners there is an implied warranty that if either loses any of his share by eviction on account of defect of title in the ancestor, the party evicted may enter upon the others and defeat the partition, or by proper proceedings may obtain recompense for the part lost. The case of *Morris* vs. *Harris*, 9 *Gill*, 20, shows this to be the common law doctrine, though in that case the rule was not applied, the implied warranty being controlled by the express covenants between the parties.

In this case, however, there are no covenants in the deed executed by these parties which can control the covenant arising from legal implication, and I can see no reason, in justice or law, why the complainant should not be entitled to call upon the parties, between whom and himself the partition was made, for contribution. Undoubtedly, upon this point, the equity of the case is with him, and, I am of opinion, he has a right in a Court of Chancery to call upon the other parties to contribute their fair proportions of the money paid by him in discharge of the decree in favor of Gittings and others, mentioned in the proceedings.

By the last clause of the will of Cumberland Dugan, he bequeathed all the rest and residue of his property, real, personal and mixed, partly by specific description, and partly in general terms, to his four children, Rebecca Hollins, Cordelia Margaret

Hollins, Hammond Dugan and Frederick James Dugan, the slaves given to the daughters being in trust. And it is alleged, and the allegation not seriously if at all denied, that some property embraced in this residuary clause remains to be distributed. Especially it is said, that ground rents, amounting to $900 per annum, in which the testator's widow (now deceased) had a life estate and which constituted a part of the residue, yet remain to be distributed. And the complainant insists that no further distribution shall be made, including the amount in the hands of the administrator of Margaret Dugan until he is paid the sum due to him.

It being the opinion of the court that the complainant is entitled to contribution in respect to the amount paid by him in satisfaction of the decree obtained by Gittings and others, an account must be stated for the purpose of ascertaining how much he is entitled to, and it would seem proper in the mean time, that no further distribution should be made, or insisted on by the complainant. The defendants have, to be sure, excepted to the averments of the bill, so far as this claim for contribution is concerned, but it will, I think, be found upon examination, that the bill does distinctly rest a part of the claim made by it upon this very ground. That it avers every fact essential to the claim, and that it is not consequently obnoxious to exceptions on this account.

The case will, therefore, be sent to the Auditor to state the necessary accounts.

————

T. P. SCOTT and ALEXANDER, for Complainants.

BROWN and BRUNE, for Defendants.