Talcott, J. [After stating the facts]
The fundamental ground of this motion presents a question which, so far as I have been able to discover, is entirely novel in this State.
At the common law no compulsory partition could be enforced, except in the case of coparceners; that is to say, when the ancestor died seized of a estate of inheritance, and left no male decendants, but only female issue, in which case the land descended to the females in equal degree as “coparceners,” each being seized of an equal share, by a tenancy, the substantial equivalent of what is now known as tenancy in common; and at the common law partition could be compelled between such co *375 parceners by the ancient writ de partitione faciendo ; and it resulted, from the fact that such partition was compulsory, that at common law,.—and upon principles manifestly equitable and just, upon a compulsory partition in such a case,—a warranty from each coparcener to the other was attached or implied. In fact, under the common law, that coparcener who was deprived of her purparty,—i. e., the share set off to her,—by the failure of the ancestor’s title, or any part thereof, might re-enter upon the lands set off to her sister, and thus annul and set aside the whole partition; or might “ deraign the warranty paramount; ” that is, call upon her coparceners to assist her in vouching the warrantor of the ancestor as to the premises adversely claimed, and, if this failed to produce restitution, have compensation from the other lands which had been set off to her coparceners by the partition. And much curious and abstruse learning was, by the ancient common law, devoted to partition between coparceners and its incidents and consequences. A careful review of the common law relating to this subject may be found in Allnatt on Part. (5 Law Lib. p. 156, &c.); and see Rawle on Cov. 473, 474, 475, 477; and Freem. on Coten. & Part. (§§ 533, 534).
In the thirty-first year of the reign of Henry VIII. (chap. 1), was passed an act of Parliament, whereby the right of compulsory partition was, for the first time, extended to joint tenants and tenants in commonand by that act it was enacted as follows : .“Provided, always, and be it enacted, that every of the said joint, tenants, or tenants in common, and their heirs, after such partition made, shall and may have the aid of the other, or their heirs, to the intent to deraign the warranty paramount, and to recover, for the rate as is used between coparceners after partition made by order of 6 the common law, any thing in this act to the contrary notwithstanding.”
*376 This, though a new statutory provision, was a recognition of the principle of the common law that a warranty attached to a compulsory partition; although the condition by which the original partition might be altogether avoided by that cotenant who had been deprived of his share by title paramount was not enacted; and so in England it was held that the condition of avoiding the partition by re-entry in case of the successful establishment of an adverse title paramount, did not exist in the case of joint tenants or tenants in common.
The just and equitable rule, that one tenant in common, who has been evicted from the share set off to him by a compulsory partition, may have equitable compensation from his cotenant whose share still remains to him, where the eviction was in consequence of a failure of a portion of the title which was partitioned, seems to have been considered and adopted as a part of the common law brought with them by the colonists of this country, and has been recognized and enforced in many of the States as applicable to tenancies in common (Rawle on Cor. 477); and sometimes without recognizing tice fact that the right, so far as tenants in common are concerned, was conferred by the statute of Henry VIII.
Thus, in Feather v. Strohoecker (3 Pen. & Watts, Pa. 505), it was held that every partition implies not only a warranty at the election of the party, but a condition entire, the breach of which gives an entry into the whole. And in Dugan v. Hollins (4 Md. Ch. 139, 147), it is stated that “ at common law it is well settled, that upon a partition between coparceners there is an implied warranty that if either loses any of his share by eviction on account of defect in the title in the ancestor, the party evicted may enter upon the others and defeat the partition, or by proper proceedings may obtain recompense for the part lostand this was assumed to be the law applicable to tenants' in common/ In fact, by the abrogation of the rights conferred by *377 primogeniture, the estate of heirs at law in this country is, in substance, analogous to the estate of coparceners at the common law.
Where estates descended to all the children equally, there is no substantial difference between coparceners and tenants in common, and the technical distinction between coparceny and estates in common may be considered as essentially extinguished in the United States (4 Kent, 367).
In Walker v. Hall (15 Ohio St. 355), which was a decree in a proceeding originally commenced for the assignment of dower, it was decreed that the copartitioners should recompense Mrs. Hall, one of the partitioners, for her loss of the equal proportion of the estate. And in Sawyers r. Cator (8 Humph. 256), it was held that there is an implied warranty between the parties to a compulsory partition, and in case of eviction by paramount title, a right to have compensation from each other for the loss sustained.
I am, therefore, of the opinion that in case of a compulsory partition between tenants in common and the failure of title to a portion of the land partitioned by a defect in the common title, and eviction from such portion, the party so evicted has a right to be compensated for the loss occasioned by the eviction, out of the other lands; and perhaps, in case of a failure of the other lands by reason of alienation by the copartitioners leaving the remaining partitioned lands insufficient, —to a pecuniary compensation from the proceeds of the alienated lands, which may result in a personal decree.
Probably in a case where the partition was recent, and no change had occurred by which the value of the lands partitioned was materially affected, and there were no other claims or equities between the parties which ought to be examined or adjusted, the proper remedy might be by a motion to set aside the judgment *378 in partition, and to have a new partition, restoring equality of partition in view of the new facts, as in the case of Bridges v. Howard (briefly reported and without any reasons in 18 Iowa, 116). In that case the partition was made in 1863. A mortgage of the ancestor, on part of the premises, to the school fund commissioner, was afterwards discovered. This mortgage was foreclosed, and the land sold in October, 1863. The copartitioner, whose title had been defeated by the foreclosure, petitioned, at the March term, 1864, to set the partition aside, and have a new partition made. And this was ordered. It did not appear, nor was it claimed, that the title or circumstances had, in any manner, changed ; and, so far as appears, nothing was involved except the mere question whether the judgment in partition could be set aside for the purpose of restoring equality of partition, where one of the copartitioners had been evicted by title paramount, from a portion of the premises held under the common title.
A final judgment in partition is not more exempt from the interference and contr'ol of courts of equity than are final judgments and decrees in other cases. Hence, such a mistake of facts, or such an accident as would authorize a court of equity to enjoin or set aside an ordinary judgment, would justify setting aside or correcting a judgment or decree in partition (Freem. on Coten. and Part. § 534).. And in a proper case, where no extrinsic circumstances were to be considered, doubtless a remedy by motion might be adopted.
But in the case now at bar there seem to be various objections to this summary mode of relief. The judgment in partition was entered more than ten years ago, and the parties then entered into the possession and the pernancy of the rents, issues and profits of the various premises to them respectively set off in severalty. ■ The partition involved many distinct parcels of land,- differently situated and of different values, and many *379 parcels of the land divided were subject to known incumbrances. The commissioners were authorized, by the commission appointing them, to cause surveys to be made of the several parcels, and were required, in making the partition, to have regard to the liens and incumbrances thereon by taxes, tax sales and mortgages, which were set forth in the report of the referee, and were also required and directed, in making said partition, to have regard to the leases of certain portions of the property which were made by the mother of the copartitioners in her lifetime, and which were particularly described in the report of the referee. The partition was a long and intricate proceeding, and involved, to a great extent, the judgment and discretion of the commissioners, one of whom is now dead.
The defendant Le Grand Marvin seems to claim, in his opposing affidavits, that the failure of. the title to the land from which George has been evicted, was caused by the improper conduct of George himself; that, in fact, he was not evicted, and did not surrender the premises, by force of or in consequence of the judgment of the supreme court, but that the surrender was under and by virtue of a compromise, involving various other considerations, out of which he claims that certain equir ties resulted to him, Le Grand, which should be considered in arriving at the measure of a just compensation for the land lost. And finally, as I understand the somewhat obscure expressions contained in his affidavits, he claims that all the land which was set off to him has passed beyond his possession, or control,—portions by foreclosures of the previous incumbrances, and the residue by various alienations.
The plaintiff was understood to claim, that the statement of Le Grand with regard to the fact that the property has passed beyond his control, is untrue, and to insist that the whole, or some portions of the property so claimed to have been alienated, are, in fact, held
*380 upon some trust for the benefit of Le Grand himself. All these facts, I think, afford a sufficient reason for denying summary relief by a motion in the original partition suit, and show that the various questions likely to arise should be presented and passed upon in a more formal manner, especially if the rights of third parties appear to have intervened, and their titles are to be brought in question. It seems to me that an action, somewhat in the nature of a bill of review, would be the proper remedy. In such a suit the further alienation of the property partitioned to Le Grand might, if necessary, be restrained by a notice of lis pendens, or an injunction order. In the case of Dugan v. Hollins (supra), which was a suit in equity, where "some property remained to be distributed, the court ordered that no further distribution should be made until payment of the sum equitably required to equalize the partition. And in the case of Sawyers v. Cator (supra), the court says, in substance: “ The remedy is by bill in chancery, either by setting aside the partition as being founded in mistake, if it can be done without injustice, and if not, then by a decree of pecuniary compensation.” The case was a bill in equity, filed for contribution to restore equality after an eviction. An action would be essentially in the nature of a bill of review, and after examining and disposing of all questions, whether of fact or law, bearing upon the equitable rights of the parties, a decree might be made for a repartition, if the situation of -the premises should be such as to render that course practicable without injustice ; if not, then such other equitable relief might be given as the situation of the parties and property might seem to require (see Dacre v. Gorges, 2 Sim. & St. 455).
Entertaining the view, therefore, that the plaintiff probably has an equitable right to recompense for the property he has lost by reason of the paramount title, *381 I am of the opinion that, at all events, in this case, the remedy is to be sought, not by motion in the partition suit, but by a new action. The motion must, therefore, be denied, without prejudice to any action to be hereafter instituted to obtain relief in the premises. As it is a new question, no costs are allowed to either party on the motion.
The order to be entered is :
Motion denied without costs to either party, and without prejudice to any suit to be instituted by the plaintiffs, or either of them, or their heirs, to obtain relief in consequence of a failure of title to a part of the land set off' to the plaintiffs, or any of them, by partition in this suit.
The decision was acquiesced in, and an action was brought.