[No. 6,556.—In Bank.]

## GEORGE W. ROBINS ET AL. v. DELIA HOPE ET AL.

FRAUD — MISREPRESENTATIONS — TITLE — REAL PROPERTY — PRESUMPTION. — A person is conclusively presumed to know the state of his own title to real property in dealing with a stranger. No misrepresentation, therefore, by the latter on this subject can have the effect of misleading.

ID.— ID.— PRINCIPAL AND AGENT.—*Query :* Whether under the maxim, *qui facit per alium facit per se*, a principal must be held to adopt the fiduciary relations which exist between his agent and those with whom he is transacting business through such agent, may well be doubted.

ID.— ID. DEFINITION — CONFIDENTIAL RELATION — FIDUCIARY RELATION.—The phrases " confidential relation " and " fiduciary relation " are convertible terms.

ID.— ID — CONFIDENTIAL RELATION — PLEADING.— A general allegation, that one person has almost unlimited confidence in another, and that the latter has great influence over the former, does not state a confidential or fiduciary relationship.

ID.—ID.—ID.—FIRST COUSIN.—The relationship of first cousin is not a fiduciary or confidential relationship.

ID.—ID.—CONSIDERATION, WANT OF.—Want of consideration does not necessarily militate against the good faith of a transaction, where an adequate motive is apparent.

APPEAL from a judgment for the defendants, in the First District Court, County of Santa Barbara. FAWCETT, J.

The defendants demurred to the complaint of the plaintiff, and the demurrer was sustained. The plaintiff elected to stand upon the complaint, and judgment was entered for the defendants.

*D. M. Delmas*, for Appellants.

The conveyance in question was purely gratis. The transaction was consummated through persons who possessed the entire confidence of the plaintiffs. In such a case, the party claiming under the gift must stand unimpeached by the slightest abuse of the confidence reposed in him. Many authorities go further, and hold that, under these circumstances, the burden of proof is upon the donee to show that the transaction was fair and proper, and was understood by the donor. (*Hogton* v. *Hogton*, 11 Eng. L. & Eq. 134, 138 ; *Cooke* v. *Lamotte*, 11 id. 26, 33, 34 ; *Bergen* v. *Udall*, 31 Barb. 23 ; *Coutts* v. *Acworth*, Law R. 8 Eq. 558, 567 ; *Lester* v. *Hodgson*, Law R. 4 Eq. 30 ; *Whelan* v. *Whelan*, 3 Cowen, 537, 576 ; *Lyon* v. *Home*, Law R. 6 Eq. 655 ; 3 Lead. Cas. in Eq. 140, 141.)

The proposition, that though the plaintiffs were admittedly ignorant, in point of fact, of their title to the premises, and though parties possessing their entire confidence who knew of their title procured from them a deed of their estate by fraudulently representing to them that they had no title, yet the plaintiffs are rendered remediless by an inexorable rule of law that "a person is conclusively presumed to know the state of his own title to real property," does not apply. Such a rule, though it may apply where parties are dealing at arm's length, can have no application under the circumstances above herein indicated. (Bigelow on Fraud, p. 10.)

*Pringle & Hayne*, for Respondents.

There was no relation of trust or confidence between the parties ; but, on the contrary, always and only that bargaining which is calculated to arouse suspicion, or a least stimulate inquiry.

There was no concealment, nor any attempt to withdraw the attention or prevent inquiry. (*Board of Commissioners* v. *Younger*, 29 Cal. 176 ; *Slaughter* v. *Gerson*, 13 Wall. 383 ; *Atwood* v. *Small*, 6 Clark & F. 447 ; *Gattling* v. *Newell*, 9 Ind. 576 ; *Bell* v. *Henderson*, 6 How. (Miss.) 311 ; *Hill* v. *Bush*, 19 Ark. 527 ; Perry on Trusts, § 175 ; Parsons on Con. 778, note *o* ;

*Duke of Beaufort* v. *Neeld,* 12 Clark & F. 286 ; *Brown* v. *Leach,* 107 Mass. 368.)

Besides, the representations did not purport to impart information, but were like the deed itself, only a reference to past transactions, to which, by such reference, they directly led the attention of appellants' bringing them face to face with all the sources of information.

Sharpstein, J. :

The gravamen of the complaint is, that the plaintiffs were induced to convey, without consideration, their interests in certain real estate to one Thomas Hope, the testator of the defendants, by reason of its being falsely represented by the agents of said Hope to the plaintiffs that they had no valid claim or title to said real estate and that said Hope had a perfect title thereto, and that he desired a deed from them merely confirmatory of one previously executed by their mother, as their guardian, to him, which the plaintiffs supposed, at the time of making their said conveyance and for several years thereafter, and which the agents of said Hope assured them, was a valid deed, and that all their right, title, interest, and claim in and to said real estate had thereby been effectually transferred to said Hope ; and that, relying upon said representations, the plaintiffs executed the deed which they now seek to avoid, without taking any independent counsel or advice, or having it read (they could not read it), or its contents explained to them.

The misrepresentation complained of was as to the title of the plaintiffs to the premises which they were induced to convey, under the impression that they had no title thereto, and we understand the rule to be, as stated by the learned judge who sustained a demurrer to this complaint, that " a person is conclusively presumed to know the state of his own title to real property. This is always the case where the party deals with a stranger, as in the present case. No misrepresentations made by Hope or his agents, therefore, as to the proceedings in probate concerning plaintiffs' title, or as to the state of their title in any respect, could have had the effect of misleading them." And the learned counsel for the appellants, if we rightly apprehend his position, concedes the rule to be as above stated.

"But this rule," he insists, "applies only where parties deal at arm's length, and where the means of information are equally open to both. It cannot be invoked where confidential relations exist between the parties."

It will thus be seen that it is only upon the question of the relations which existed between the parties, that the Court below and the learned counsel for the appellants differ. The Court held that the relation of Hope to the appellants was that of a stranger. The counsel insists, if we do not mistake his position, that conceding that to be so, the deed was procured through the misrepresentations of Hope's agents, between whom and the appellants confidential relations did exist, and the transaction must therefore be viewed in the same light as it would be if such relations had existed between Hope and the appellants, and he, instead of said agents, had made the misrepresentations complained of. Whether under the maxim, *qui facit per alium facit per se*, a principal must be held to adopt the relations which exist between his agent and those with whom he is transacting business through such agent, may well be doubted. But does it appear that confidential relations did exist between Hope's agents and the appellants? One of those agents was Albert Packard, a practicing lawyer, and he, some three or four weeks prior to the execution of the deed which the appellants seek to avoid, "visited Z. Branch, the father of F. Branch, then and now being the husband of the said plaintiff, Conception Branch, at their place of residence in the County of San Luis Obispo, and also said Encarnacion (the mother of the plaintiffs), all of whose confidence he possessed to an almost unlimited extent, and over whom he exercised a great influence," and then and there made the misrepresentations complained of, to the persons above named, who repeated them to the plaintiffs. Now it is alleged that Z. Branch and F. Branch—one the father-in-law and the other the husband of one of the plaintiffs (four of the five plaintiffs are married women) —and the mother of the plaintiffs, had almost unlimited confidence in said Packard, and that he exercised great influence over them. Does that show that a confidential relation existed between Packard and the appellants, or even between him and the three persons to whom he directly made the alleged misrep-

resentations? The phrases "confidential relation" and "fiduciary relation" seem to be used by the courts and law writers as convertible terms. It is a peculiar relation which undoubtedly exists between "client and attorney, principal and agent, principal and surety, landlord and tenant, parent and child, guardian and ward, ancestor and heir, husband and wife, trustee and *cestui que trust,* executors or administrators and creditors, legatees or distributees, appointer and appointee under powers, and partners and part owners. In these and the like cases the law, in order to prevent undue advantage from the unlimited confidence, affection, or sense of duty which the relation naturally creates, requires the utmost degree of good faith (*uberrima fides*) in all transactions between the parties." (1 Story's Eq. Jur. 218.) If there is an allegation of the existence of any peculiar relation between Packard and the appellants, or between him and the persons to whom he is alleged to have made misrepresentations respecting the title of the appellants to the land which they conveyed to Hope, it has escaped our observation. There is nothing peculiar in the alleged relation between Packard and the persons to whom he is alleged to have made misrepresentations, and it is not alleged what relation if any existed between him and the appellants. It is alleged generally that the persons to whom he made the misrepresentations had almost unlimited confidence in him, and that he had great influence over them, but why that was, or would naturally be so, is not apparent. Certainly no relation is shown to have existed between him and them from which the law would infer such confidence and influence. It is not claimed that Z. Branch, F. Branch, or the mother of the appellants, was ever employed by Hope, or even by Packard, to procure or to aid any one in procuring a deed from the appellants. So that whatever else Hope may be held responsible for, he cannot be held responsible for their acts or misrepresentations. They were in no sense his agents.

It is alleged that one Charles W. Dana, a "first cousin" of the appellants, was also employed by said Hope to procure said deed, and that he brought the same to the appellants already prepared for their signatures, and that he possessed the entire confidence of the appellants, "and understood well the English

language in which the deed was written, which neither of the plaintiffs did, and then and there, he being himself deceived as plaintiffs believe, represented to the plaintiffs that they had no right or interest in or claim to the said rancho; that their mother had, as guardian, sold all their interests therein to said Hope, and that they had no claim or hope to recover the same back; that he, the said Hope, had already a good title to the said property; that there was no actual necessity of such a deed from them to Hope, but that he, Hope, was old, foolish, and childish, and wanted their deed confirming the sale so made by their said guardian, but that their (plaintiffs') signatures thereto would amount to nothing."

It has never been held, as far as we are advised, that the relation of first cousin is a peculiar one, or that first cousins do not deal with each other at arm's length. It is not a relation which would naturally inspire unlimited confidence, affection, or sense of duty on either side. But if no relation existed between Hope and the appellants which would render the deed executed by them voidable, if said misrepresentations had been made by him directly, is it not voidable because made by agents of his, in whom the appellants had unlimited confidence? It is not alleged that he knew that they had unlimited confidence in said agents. The most that can be claimed, we think, is, that the acts and representations of his agents were his acts and representations. We do not think that, by reason of his employment of them, their relations towards the appellants became his relation towards them. If they did not, it is quite clear that the complaint does not show that Hope's relation to the appellants was other than that of a stranger, or that he and they were not dealing at arm's length.

It is alleged that the appellants made said deed without consideration. But it is not alleged that Hope did not pay the full value of this property to the mother of the appellants when he purchased from her, as he and she and all others interested in the property supposed at the time, a perfect title to it; and it is not, therefore, difficult to discover an adequate motive for executing a deed which should vest in him that which he had purchased for full value, and which it was supposed the previous deed had vested in him. Want of consideration is a cir-

cumstance which may have more or less weight upon the mind of a court or jury when determining whether a deed has been obtained through fraud. But in a case like this, where an adequate motive for making the deed is apparent, that circumstance does not necessarily militate against the *bona fides* of the transaction.

It is alleged that the deed was not read, or its contents explained to appellants before they executed it. It is not alleged that they expressed any wish to have it read, or to have its contents explained to them, which may be accounted for by the fact that they were under the impression that all their interest in the property had been previously conveyed to Hope by what they then supposed to be a valid guardian's deed, executed by their mother. If they had read the deed which they executed with the greatest care before executing it, or if its contents had been fully and faithfully explained to them, it would not have had the slightest tendency to remove that impression from their minds; and so long as that impression remained undisturbed, it is in the highest degree improbable that they would have deemed it of the slightest importance that the deed purported to convey all their interest in the property in which they believed that they had no interest, instead of merely confirming and ratifying a sale and conveyance which they believed to be valid.

It is not claimed that the signatures of the appellants were obtained by any trick or artifice, by which they signed a paper different from that which they intended to sign, nor that its contents were falsely stated to them; but they signed it under the impression that they were conveying property in which they had no interest, and they have since learned that they had an interest in it; and if they had ascertained that before they executed the deed, they would not have executed it without consideration. Without other help, they might have read that deed hourly, from its date to the present time, without ascertaining from it that they had any interest in the property described in it.

The deed was not executed until about a month after Packard had communicated to the husband and father-in-law of one of the appellants, and to the mother of all of them, the desire of

Hope to have a deed from them. This afforded ample time for deliberation, and we infer from the statements of the complaint that the opportunity was to some extent improved.

As before remarked, it does no appear that Hope did not pay full value for the appellants' interest in the land, when it was supposed that he had made a valid purchase of it at the invalid guardian's sale; nor is it shown that the appellants were not as much benefited by that sale as they would have been by a valid one. It is not alleged that any of the appellants are weak-minded, or that they were at the time of the execution of their said deed suffering under any affliction or embarrassment. Four of them were married women, but their husbands united with them in the execution of the deed.

Aside from the misrepresentations complained of, the equities of the case are not very strongly on the side of the appellants, and as those misrepresentations related solely to their title, and if made as charged, were made by one dealing with them at arm's length, they do not, upon well-established principles, constitute a sufficient ground for the granting of the relief prayed. We therefore think that the demurrer to the complaint was properly sustained, on the ground that it does not state facts sufficient to constitute a cause of action.

Whether the action was brought within the time limited by the statute for the commencement of such an action, is a point upon which we express no opinion, although that question was raised by the demurrer, and ably discussed by counsel in their oral arguments and briefs.

Judgment affirmed.

MORRISON, C. J., ROSS, J., McKINSTRY, J., and McKEE, J., concurred.

THORNTON, J., and MYRICK, J., dissented.