[L. A. No. 228. Department Two.—November 1, 1897.]

## LILIE C. SULLIVAN et al., Respondents, v. CHARLES A. LUMSDEN, Respondent, and J. H. D. WINGFIELD et al., Appellants.

PARTITION—GRANT OF PUEBLO LANDS—REFERENCE TO OFFICIAL MAP—SUBSEQUENT CHANGE OF MAP—DIFFERENCE IN LOCATION OF LOT.—Where a city sold and conveyed its title to all of the lands of a pueblo lot by reference to an official map of the pueblo lands of the city then on file in the office of the city clerk, and designated by the name of the surveyor who made it, and the title to lands sought to be partitioned is deraigned from the city under deeds of portions of such pueblo lot, containing such reference, the partition must be made according to such official map, and not according to another official map subsequently adopted by the city, giving a different location of such pueblo lot.

ID.—JURISDICTION OF EQUITY—VACATION OF DECREE—RE-PARTITION—MISTAKE OF REFEREE—USE OF WRONG MAP.—Equity has jurisdiction to correct a mistake in a decree in partition, by setting it aside, and making a re partition, where the mistake was extrinsic and collateral to the questions examined and determined in the original action for partition, and led the court to do what it did not intend to do, in confirming to the plaintiffs a piece of land not described or referred to in the complaint, or in the findings or interlocutory judgment, and which was not included in the title to the land sought to be partitioned, but was owned and possessed adversely by one not a party to the action, it appearing that the mistake originated in an incorrect use made by the referees of the lines indicated upon a second official map of the city then in force, which showed different boundaries of the lot sought to be partitioned from those fixed by a prior official map which was referred to in the grant made by the city, under which the title to the lot sought to be partitioned was deraigned, and under which the partition ought to have been made.

ID.—CONCEALED MISTAKE—DISCOVERY—REASONABLE DILIGENCE—LACHES NOT IMPUTABLE.—The plaintiffs are not barred by delay and laches from maintaining a suit in equity to set aside the final decree of partition on the ground of mistake, brought within one year after the decree was entered, where it appears that there was nothing in the report of the referees, or in the record of the action for partition, or in the final decree, to indicate the mistake, but it was concealed by reference to

the lands described in the complaint, and, without fault or negligence of the plaintiffs, was not discovered until after their remedy by motion or other legal process in the original action had expired, and that as soon as they received information which led them to suspect it, they took immediate steps to ascertain the facts, and employed counsel to prosecute the suit in equity.

ID.—PLEADING—DEMURRER TO COMPLAINT—PARTIES.—A demurrer to the complaint in equity for failure to state a cause of action, and for a defect or misjoinder of parties defendant, is properly overruled, where the complaint states all the facts necessary to constitute a cause of action for relief in equity, and further stated that the parties therein named, plaintiffs and defendants, comprised all persons who owned, or claimed an interest in the pueblo lot of which partition was made, or any part thereof, or whose rights or interests were in any way affected by the decree in partition, or by the action to set it aside.

ID.—EXCHANGE OF QUITCLAIM DEEDS—MUTUAL MISTAKE—WANT OF CONSIDERATION—ANNULMENT—RE-PARTITION—FORM OF DECREE.—Where the plaintiffs executed a quitclaim deed for a small portion of the lands claimed by them in exchange for a like deed from the appellant for a parcel of land outside of the lot of which partition was sought, and to which appellant had no valid claim or title, and it appeared that the deeds were exchanged by mutual mistake, and that plaintiff's deed was without any consideration, and the court sets out in its findings all the facts necessary to annul the deeds, and in the judgment of re-partition, decreed an allotment to each of the parties of the land originally owned by such party, it is not necessary that there should be a formal annulment of the deeds in the judgment, but it had the effect to vacate and set aside the deeds, and was sufficient in form.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. W. L. Pierce, Judge.

The facts are stated in the opinion.

Withington & Carter, and Parrish & Mossholder, for Appellants.

W. A. Sloane, for Plaintiffs, Respondents.

Wadham & Stearns, for Charles A. Lumsden, Defendant and Respondent.

BELCHER, C.—On January 6, 1888, Lillian Cullen commenced an action in the superior court of San Diego county against J. C. Sprigg, the plaintiffs in this action and others, for the partition of lot 1111 of the pueblo lands of the city of San

Diego, "as shown and delineated upon the official map thereof made by Charles H. Poole, C. E. and U. S. deputy surveyor, and known as the Poole map." The plaintiffs here did not appear in that action, and their defaults were entered. The case was tried, and the court found that the parties to the action were the owners of certain described portions of the said lot, the plaintiffs here owning ten and eighty-five one hundredths acres thereof, which was a strip situated along the east line of the lot, and was two hundred and ten feet wide. In the findings the "said lot" and the "Poole map" are frequently referred to. In accordance with the findings, an interlocutory judgment was entered, directing "that the aforesaid pueblo lot be partitioned and set apart in severalty to the parties thereto, the plaintiff, intervenor, and defendants in this suit, in the proportions determined in this judgment and the findings of fact filed herein"; and certain named persons were appointed to make the partition. From that judgment and an order denying a new trial the plaintiff in the action appealed to this court, where the judgment and order were affirmed. (*Cullen v. Sprigg*, 83 Cal. 56.) In deciding the case it was said: "The rights of the respondents depend upon their deraignment of title from the city under two deeds from the trustees of the city dated March 1, 1869, to William Evans, one for 'that lot of land containing sixty acres lying in block No. 1111, according to the official map of said city made by Charles H. Poole, A. D. 1856,' and the other for 'that lot of land containing forty acres lying in block 1111,' according to the same map."

After that decision was rendered, the referees proceeded to make the partition, and reported their proceedings to the court, as required by section 785 of the Code of Civil Procedure. The report was approved and confirmed by the court, and a final decree in partition was made and entered April 20, 1894. The decree recited that the report of the "referees, heretofore appointed by an order of this court to make partition of the lands in the complaint herein described," had been filed and confirmed, "by which it appears that said referees have made partition of the said premises described in the complaint in this action and in the interlocutory decree herein entered and filed on the seventeenth day of December, 1888."

It was not shown by the report or the decree, but was subse-

quently discovered, that in making the partition the referees used, and followed the lines laid down upon a map known as the Pascoe map. This map located the east line of lot 1111 some two hundred and ten feet further east than it was located by the Poole map, and it was this strip between these two lines which was allotted to the plaintiffs herein as their portion of the said premises. But it appears that the said strip had been sold to one Veasv, who was not a party to the partition suit, as a portion of lot 1110 according to the Poole map, and had been inclosed, occupied, and claimed by him, as against all the world, for about ten years.

Within a year after the said final decree was entered, the plaintiffs commenced this action to have the same vacated and set aside and a new partition made, upon the ground that the referees and the court, by mistake and inadvertence, failed to allot or set apart to them, or either of them, any part or interest whatever of or in the lands of said pueblo lot 1111, of which partition was ordered and adjudged, but did allot and set apart to them land in an adjoining lot, to which they had and could thereby acquire no title.

The case was tried, and the court found, among other things, that all the averments of the complaint were true, and gave judgment in favor of the plaintiffs as prayed for. From that judgment and an order denying a new trial the defendants have appealed.

It is not claimed by the appellants that the plaintiffs were not the owners of an interest in the land to be partitioned equal to ten and eighty-five one hundredths acres thereof, or that under the final decree they acquired or could assert any right or title to the parcel allotted to them; but the contention is: 1. That plaintiffs were not entitled to have the partition made according to the Poole map; 2. That they were not entitled to the relief sought, because the action was brought to annul a former decree upon inadequate grounds; 3. That if the action were a proper one, still plaintiffs had lost their right to maintain it by their own laches.

1. Should the partition have been made according to the Poole map? It appears that the Poole map was filed in the office of the city clerk in 1856, and was indorsed: Official map of the pueblo

lands of the city of San Diego, compiled from all existing authorities under directions of the board of trustees for the years 1855 and 1856. By Chas. H. Poole, C. E., U. S. Dep. Surveyor." It also appears that in 1870 another map of the pueblo lands of the city was made by James Pascoe, which, on August 11th of that year, by a resolution of the board of trustees of the city, was formally adopted as the official map of said pueblo lands. O. N. Sanford, civil engineer, testified that after 1870 the Pascoe map was the official map of the city, "but conveyances after that date calling for the official map of the city often meant the Poole map." It further appears that the plaintiffs deraigned their title through mesne conveyances from one William Evans, to whom, in March, 1869, the city of San Diego conveyed "one hundred acres undivided in and of said pueblo lot 1111 as shown upon the map of said pueblo lands, made by Charles H. Poole in 1856," the whole lot containing one hundred and seven and sixty-seven one hundredths acres of land. And the court found "that thereafter in said year 1869 the said city of San Diego sold and conveyed its title in and to all of the lands of said pueblo lot 1111, by reference to and as designated on said Poole map."

Under the circumstances shown, we think it clear that the partition was intended to be made, and should have been made, according to the Poole map, and that the failure to so make it was due alone to the mistake and inadvertence of the referees.

2. Had the court below jurisdiction and authority to set aside the decree in partition and to grant the relief prayed for? Appellants invoke the rule of *res adjudicata,* and insist that the decree was final and conclusive. (Citing *Pico v. Cohn,* 91 Cal. 129; 25 Am. St. Rep. 159; *United States v. Throckmorton,* 98 U. S. 113, and other cases.)

That a party against whom an unjust judgment has been obtained through accident, mistake, or fraud may, in certain cases, maintain an equitable action to set aside the judgment is well settled. (*Bibend v. Kreutz,* 20 Cal. 110; *Senter v. Senter,* 70 Cal. 619; *Dunlap v. Steere,* 92 Cal. 344; 27 Am. St. Rep. 143.)

In *Pico v. Cohn, supra,* it is said: "That a former judgment or decree may be set aside and annulled for some frauds there can be no question; but it must be a fraud extrinsic or collateral to the questions examined and determined in the action. And we think

it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court had been imposed upon."

The same rule applies to mistakes, and to judgments or decrees in partition as well as other judgments. "A final judgment or decree in partition is not more exempt from the interference and controlling power of courts of equity than are final judgments and decrees in other cases. Hence, such a mistake of facts, or such accident as would authorize a court of equity in enjoining or setting aside an ordinary judgment, will authorize it to set aside or correct a judgment or decree of partition. . . . . If a mistake in matters of description has been made by the commissioners in drafting their report, and has also been carried into the final judgment, it may be corrected by proceedings in equity." (Freeman on Cotenancy and Partition, sec. 534; *Smith v. Butler*, 11 Or. 46; *Marvin v. Marvin*, 52 How. Pr. 97; *Wilbur v. Dyer*, 39 Me. 169; *Douglass v. Viele*, 3 Sand. Ch. 439.)

"The mistake which will justify this relief may also be the mistake of the court. But wherever it may be found that inadvertence or mistake is held to be ground for setting aside a judgment, it will be noticed that it is not a mistake of the law, or an inadvertent conclusion as to what the law is, but a mistake or inadvertence in doing something not intended to be done." (1 Black on Judgments, sec. 335.)

Was the mistake here complained of such a one as a court of equity will relieve against? We think it was. It was clearly extrinsic and collateral to the questions examined and determined in the action, and led the court to do what it evidently never intended to do—that is, to confirm to the plaintiffs a piece of land not described or referred to in the complaint or in the findings or interlocutory judgment, and which was then owned and in the adverse possession of one not a party to the suit.

3.  Were the plaintiffs barred from maintaining the action be-

cause of their delay and laches in commencing it? Upon this question the court below found the facts as follows:

"8. That there was nothing in the report of said referees, or in the record of said action for partition, or in said final decree, to show or indicate that a mistake had been made, but, on the contrary, it appeared from said report, record, and decree that said plaintiffs were allotted, and had assigned to them, the tract of land within said pueblo lot 1111 designated in the calls of the deeds from their grantors and by the findings of the court in said action for partition.

"9. That said plaintiffs relied upon the correctness of the survey and report of said referees and the decree of said court, and upon representations that said survey was correct, which were made to them at the time immediately following said final decree, by said referees, and by the attorney for plaintiff in said partition suit, and by surveyors familiar with said lands; and because of said reliance, and without any fault or negligence on their part, or on the part of either of them, for a long time, and until after their remedy by motion or other legal process had expired by lapse of time, did not discover or suspect that said mistake or any mistake had been made in said survey and partition.

"10. That as soon as plaintiffs received information which led them to suspect that said mistake had been made, they employed counsel to prosecute this action, and took immediate steps to ascertain the facts regarding the true boundaries of said pueblo lot 1111, and at all times used reasonable diligence in the commencement and prosecution of this action, and that such delay as occurred after the discovery of the facts which led plaintiffs to doubt the correctness of said survey and partition, was necessarily occasioned because of conflicting surveys of said pueblo lands, and because the uncertainty as to the location of established corners and monuments made it a difficult and intricate matter, requiring much time and research, to locate the true boundary lines of said pueblo lot 1111."

These findings were justified by the evidence, and are, we think, a sufficient answer to appellants' contention on this point.

4. There was no error in overruling the demurrer to the complaint. That pleading stated all the facts necessary to constitute a cause of action, and it did not appear upon the face thereof that

there was a defect or misjoinder of parties defendant. On the contrary, the complaint stated "that the parties herein named, plaintiffs and defendants, comprise all persons who own or claim an interest in said pueblo lot 1111, or any part thereof, or whose rights or interests are in any way affected by said decree of partition, or by this action."

5.  It appears that after the interlocutory judgment was entered, but before the final decree, plaintiffs executed to the appellant, the College Hill Land Association, a quitclaim deed for a small portion of the lands claimed by them, and the said association executed to them a like deed for a parcel of land outside of the said lot, and to which it had no claim or title. The court found, in effect, that the plaintiffs' deed was made by mutual mistake, and contrary to the purpose and intent of the parties thereto, and without any consideration; and that, in fact, plaintiffs had at no time conveyed or parted with their title and interest in said pueblo lot 1111, or any part thereof. Counsel for appellants object that no formal decision or order setting aside the said deeds was made, and that the judgment is silent as to them. But the court sets out in its findings all the facts necessary to annul the deeds, and in its judgment decrees an allotment to each party of the land originally owned by such party. This had the effect to vacate and set aside the deeds, and was sufficient.

It results from what has been said that we find nothing in the record calling for a reversal, and that the judgment and order appealed from should be affirmed.

Haynes, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.