[Civ. No. 10700. First Appellate District, Division One.—November 30, 1938.]

EVA GORE et al., Appellants, v. JOSEPH W. BINGAMAN, as Trustee, et al., Respondents.

Weinmann, Quayle & Berry and George Olshausen for Appellants.

Fitzgerald, Abbott & Beardsley for Respondents.

CONLAN, J., *pro tem.*—This is an appeal from the judgment, in favor of respondents for declaratory relief in an action with respect to the construction of the decree of distribution of the estate of Edward A. Bushell, deceased, made and entered on June 18, 1937, by the Superior Court of the County of Alameda, State of California, in which said judgment it was declared: 1. That the plaintiffs and each of them take nothing by this action; 2. That the defendant Maude Dobinson Emsley is the owner of the undivided one-sixth (1/6) interest in and to the net income and profit of the residuary trust estate created by the will and by the decree of distribution of the estate of Edward Adolphus Bushell, deceased, accrued and accruing from September 15, 1934, and continuing to the termination of said trust therein mentioned.

On January 24, 1924, Edward Adolphus Bushell, a resident of Oakland, executed a holographic will which, in part, provided as follows:

"THIRD: I give and bequeath to the following
relatives and friends:
Mrs. Florence N. Stepson King (Niece), Fifteen
    Thousand Dol...........................$15,000.00
Mrs. Lucy Shaw (Niece), of Wagga, N. S. W.
    Fifteen Thousand Dol..................... 15,000.00

Mrs. Muriel Hunter (Niece), Hanley, N. S. W. Five Thousand Dol. .......................... 5,000.00

Miss Blanch Hunter (Grandniece), N. S. W. Two Thousand Dol. ............................. 2,000.00

Mrs. Louisa Grace (Niece), Sidney, N. S. W. Fifteen Thousand Dol. ........................ 15,000.00

### QUEENSLAND, AUSTRALIA

Mrs. Edith Phillips (Niece), Brisbane, Fifteen Thousand Dol. ............................$15,000.00

Mrs. Flossy Phillips (Niece), Toomba, Ten Thousand Dol. .............................. 10,000.00

Mrs. Teppie Holland (Niece), Walston, Fifteen Thousand.

Miss Edie Martin (Grandniece), Goodna, Two Thousand Dol. .............................. 2,000.00

Mrs. Agnes Martin (Niece), East Ipswich, Fifteen Thousand Dol. ............................ 15,000.00

Mrs. Edie Wells (Niece), Nambour, Ten Thousand Dol. .................................... 10,000.00

### OAKLAND, CALIFORNIA

Arthur A. Bushell (Brother), Oakland. .........$ 5,000.00

William C. Deans (Nephew), Fifteen Thousand Dol. .................................... 15,000.00

Norman B. Deans (Nephew), Five Thousand Dol. .................................... 5,000.00

Minnie Dobinson (Niece), Five Thousand Dol. ..... ........................................... 5,000.00

Maude A. Dobinson (Niece), Five Thousand Dol. ........................................... 5,000.00

With right of representation in case of any of said legatees before my death.''

''FIFTH: And I further desire that Five Hundred Dollars ($500) per annum be paid to Mills College to assist in the upkeep and maintenance of the 'Annie E. Bushell Landscape Plan' and beautification of grounds and entrance, to be paid out of trust fund, for 20 years, I direct that a Life Annuity of Fifty Dollars per month be purchased for my Brother Arthur, my household effects and jewelry give to Mildred A. Woodward. After all bequests are fully paid and satisfied the remainder of my estate, be it real estate,

leases, bonds, notes, deeds of trust, money or otherwise, shall be converted into a Trust Fund to exist for a period of Twenty-Four years, unless all the beneficiaries die sooner. Income and proceeds of said property to go to my Oakland Relatives and Friends, as follows: William C. Deans, Norman Deans, Minnie Dobinson, Maude A. Dobinson, Joseph W. Bingaman and Mildred A. Woodward (my faithful secretary), in equal shares, in event of either of beneficiaries death, *his next of kin shall take his share, when the trust terminates the remainder shall go to my next of kin then living.*" (Italics ours.)

On July 3, 1924, said decedent executed a codicil to the said will in which he revoked the bequests to his heirs at law of what may be left of the principal of his estate after the expiration of the trust period, and he devised the same unto the West Oakland Home, a corporation, for the exclusive purpose of erecting and maintaining a home for homeless children to be known as The Annie E. and E. A. Bushell Home for Homeless Children, to be erected in Oakland.

The decree of distribution which was signed and filed on the 17th day of December, 1925, in the Superior Court of Alameda County provided, in part, as follows: "SECOND: Said trustees and their said successors, if any, shall receive the income, rents and profits therefrom and shall pay all of the net income and profits of said property so held in said trust fund including accrued income therefrom from and after November 9th, 1925, and the income and profits thereof to the termination of said trust in equal shares to WILLIAM C. DEANS, NORMAN DEANS, MINNIE DOBINSON, MAUDE A. DOBINSON, JOSEPH W. BINGAMAN and MILDRED A. WOODWARD, for the period of twenty-four (24) years after the date of this decree, unless all beneficiaries die sooner, in which event said trust shall cease and terminate at the date of the death of the last beneficiary thereof, and in case of the death of any of said persons, WILLIAM C. DEANS, NORMAN DEANS, MINNIE DOBINSON, MAUDE A. DOBINSON, JOSEPH W. BINGAMAN, or MILDRED A. WOODWARD before the termination of said trust the amounts that would have been payable to each such decedent so dying from and out of said trust estate if he had not died, *shall be paid to the children and issue of the blood of*

*such decedent or decedents living at the time of the death of
such decedent or decedents by right of representation, and in
case such decedent or decedents leave no descendants him sur-
viving, then to the nearest blood relations of each such dece-
dent living at the date of death of each such decedent by right
of representation in the place and stead of each respective
original beneficiary so dying, and in such proportions as said
children, issue, descendants or blood relations, as the case may
be, of said original beneficiary so dying, would inherit the
estate of the said decedent so dying, under the laws of the
State of California, if they were his sole heirs at law, and he
died intestate.* Capital improvements and services and ex-
penses for the care of the capital of said trust fund other
than State, County and municipal taxes shall not be con-
strued to be expenses in determining net income. Said
amounts of the net income and profits of said trust fund so
payable and distributable to such successors of the original
beneficiaries as representative of and in lieu of said original
beneficiaries shall continue to be so paid and distributed by
the said trustees and their successors to such respective suc-
cessors of the original beneficiaries until the final termination
of said trust, and that upon the final termination of said
trust whether the same be by lapse of said period of twenty-
four (24) years or the sooner termination thereof, that then
and in that event all the residue and remainder of the said
trust property existing at the date of termination of said
trust shall be by this court distributed to such corporations
or persons as this court may upon the hearing of petition
for final distribution determine." (Italics ours.)

Among the findings of fact in the instant case is paragraph
seven (7), which reads as follows: "Said Minnie Dobinson
left no child or children surviving her, which child or chil-
dren had been born of said Minnie Dobinson; said Minnie
Dobinson left no issue of the blood or descendants surviving
her; in this connection, however, it is a fact that the word
'children' as used in said provision of said decree of dis-
tribution wherein it was decreed that upon the death of
Minnie Dobinson the amounts that would have been payable
to Minnie Dobinson out of said trust estate if she had not
died shall be paid to the 'children' of Minnie Dobinson living
at the time of her death, was not used in the decree of dis-

tribution in the sense or meaning that it should include no person other than a child or children born to Minnie Dobinson, but that said word 'children' was used therein so as to include, and was intended to refer to and include, and did refer to and include, said defendant Maude Dobinson Emsley; said word 'children' was used therein for the purpose of providing and decreeing that upon the death of Minnie Dobinson said amounts that would have been payable to Minnie Dobinson out of said trust estate if she had not died, and the whole of said amounts, shall be paid to said defendant Maude Dobinson Emsley whose status as a child of Minnie Dobinson is fixed and established by said will and by said decree of distribution.''

Of the six named beneficiaries William Deans and Norman Deans were the testator's nephews; Minnie Dobinson was his niece by marriage, that is, she was his wife's niece by blood, and Maude Dobinson (Maude Dobinson Emsley) was a child whom Minnie Dobinson and her husband took into their home and reared as their child but never adopted.

Minnie Dobinson, one of the beneficiaries under the trust created by E. A. Bushell, died in 1934, nine years after the Bushell estate was distributed and by the terms of the trust had some fifteen (15) years to continue. The claimants to the share of the income of the trust fund, which would be payable to Minnie Dobinson if she were living, are the appellants who are her collateral heirs and who reside in England. The respondent is said Maude Dobinson Emsley.

Minnie Dobinson was the wife of Alfred Dobinson, and at the time of respondent's birth the Dobinsons resided in England. They never had any children of their own and when the respondent was only six (6) days old they took her into their home; she was given the name of Maude A. Dobinson and was baptized as their own child. The respondent Maude Dobinson Emsley lived in the home of Alfred and Minnie Dobinson for the next thirty (30) years, and until Minnie Dobinson's death. She was known and treated as their own child, being kept in ignorance of the fact that she was not their own child. This fact was known to not more than a score of persons, most of whom resided in England.

In 1911 the Dobinsons moved from England to Oakland, where Edward A. Bushell, whose wife was Minnie Dobinson's aunt, had been residing for many years. They brought with them the respondent, then a child of seven years. For a short time after their arrival in Oakland, they lived with the Bushells in the Bushell home. For the next twenty-three years, until Minnie Dobinson's death, the respondent lived in Oakland with Alfred and Minnie Dobinson as their child. And for the next fourteen years, until Edward A. Bushell's death, Alfred, Minnie and Maude Dobinson, the respondent, lived in intimate relationship with Mr. Bushell, and until her death, with Mrs. Bushell. Mr. Bushell knew that the respondent was not the child of Alfred and Minnie Dobinson, but he carefully guarded the secret. He always referred to Mrs. Bushell as the respondent's aunt, and to himself, as the respondent's uncle, and to Minnie Dobinson, as the respondent's mother, and to the respondent as Minnie Dobinson's child. And he caused the respondent to regard and to refer to his wife and himself as her aunt and uncle.

The Bushell will (a holographic will) in which he referred to the respondent as his ''relative'' and his ''niece'', created a trust fund, of which Minnie Dobinson and the respondent were two of the six beneficiaries. He provided that if any of the beneficiaries died, his ''next of kin'' should take such beneficiary's share. And, in the decree of distribution, it was provided that if any beneficiary died his ''children and issue of the blood'' should take, and, in the absence of any children or issue of the blood, his ''nearest blood relations'' should take.

The respondent claims the share of the trust income that would be paid to Minnie Dobinson if she were living, and the trial court awarded such share of the trust income to the respondent, upon the theory that the testator intended her to receive that share; that the testator intended her at all times to be known and treated as the child of Minnie Dobinson; that although he knew that she was not in fact the child of Minnie Dobinson he intended that fact to remain a secret; that he gave her the status of such child in his will, and gave to her, as such child of Minnie Dobinson, the share of the income of the trust that would be payable to Minnie Dobinson as long as she should live.

Respondent further contends that the testator did not intend that the English claimants, or any of them, should take this share of the trust income, and that he did intend that the respondent, whose status as the child of Minnie Dobinson he expressly recognized and confirmed in his will, should take this share; that this is a fact established by clear, convincing, uncontradicted evidence which no one can successfully dispute.

The appellants contend that, even if the intention of the testator was as claimed by the respondent, and even if the true facts had been known at the time of distribution, and had been then, presented to the probate court, the probate court could not have given effect to the intention of testator, and that, even if it were conceded that the probate court could have given effect to the intention of the testator, a court of equity is powerless, several years after the rendition of the decree of final distribution, to give effect to that intention.

Questions involved on this appeal:

"Where plaintiffs are the nearest blood relatives of a deceased legatee, and defendant is a stranger to the blood, taken into the legatee's household, treated as a child but never adopted, and

" (1) Where the decree of distribution provides that the legatee's share (as well as similar shares of various legatees) shall be paid to the children and issue of the blood of such decedent by right of representation . . .

" (a) Can the defendant introduce evidence of her relations with decedent as 'explanation' of the terms of the decree?

" (b) Could such evidence have any legal significance, if admitted?

" (c) Can defendant introduce such evidence together with evidence that she did not know her true status, to 'reform' the decree for mistake *nine years after its rendition*, if defendant either appeared or did not appear at the distribution proceedings?

and " (2) Where the will describes a list of legatees as 'relatives *and friends*' (although also describing each with some form of relationship) defendant, not being a blood relative; further describes certain pairs of legatees, respectively as 'niece' and 'grandniece' but describes defendant and her

putative mother both as 'niece'; then leaves the share of the deceased legatee to her 'next of kin';

"(a) Is defendant designated at all either as a relative, or as a daughter of the deceased legatee?

"(b) If so designated, would this designation (contrary to fact) enlarge the ordinary meaning of 'next of kin'?

"(c) Can defendant introduce the above (or any) extrinsic evidence to bring herself within the term 'next of kin' "?

At the trial of the instant case, over the objection of the appellants, Mr. Joseph W. Bingaman, who was the testator's attorney, testified that when the testator was preparing his holographic will be showed Mr. Bingaman a pencil draft in which he had provided (as he had in the final draft) that, if any of the beneficiaries of the trust died, "his next of kin to take his share". Mr. Bingaman further testified that the testator then asked him who (under such a will) would take the Maude A. Dobinson share if Maude A. Dobinson died, and who would take the Minnie Dobinson share if Minnie Dobinson died. Mr. Bingaman told him (the testator) that if Maude A. Dobinson died, Minnie and Alfred Dobinson would each take one-half ($\frac{1}{2}$) of her share; and that if Minnie Dobinson died, Maude A. Dobinson (the respondent) would take the Minnie Dobinson share.

The respondent contends that the appellants did not directly challenge or directly refer to these findings of the trial court, and they argued that the facts are contrary to the facts found by the trial court.

Respondent further contends that the trial court's findings, as to the intention of the testator as expressed in the will, are binding on the appellate court, even though another interpretation was equally tenable. (Citing *Kautz* v. *Zurich General A. & L. Ins. Co.*, 212 Cal. 576 [300 Pac. 34], and *Estate of Boyd*, 24 Cal. App. (2d) 287 [74 Pac. (2d) 1049].)

Respondent further contends this rule is particularly applicable where, as here, the determination of the testator's intention depended not alone on the written instrument, but also on extrinsic evidence, and inferences to be drawn from all of the evidence.

Respondent further contends that since the respondent was not a "relative" of the testator except in the sense

that she was the child of his wife's "niece", Minnie Dobinson, and since the respondent was not a "niece" of the testator except in the sense that she was the child of his "niece", Minnie Dobinson, it appears to be obvious that it was in that sense that the testator referred to the respondent in his will.

We believe that this contention is not correct. The will states "next of kin". Those words, while they may be ambiguous as to the meaning of "next of kin", being an "heir" or "blood relative", cannot be construed to include a stranger of the blood such as a person who was only known as a "child" and never adopted.

It is stated in the *Matter of Estate of Bourn,* 25 Cal. App. (2d) 590 [78 Pac. (2d) 193] : "The last clause of section 105 of the Probate Code, which is a reenactment of section 1318 of the Civil Code, provides that when an uncertainty arises on the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, but excluding the oral declarations of the testator as to his intention; and the testimony in question was introduced by appellants in furtherance of their theory that an uncertainty had arisen upon the face of the will by reason of the use of the technical term 'any annuity or annuities'. But as held by the probate court, and properly so in our opinion, no such uncertainty existed. Moreover, the testimony was doubtless incompetent for the reason that said conversations necessarily involved the declarations of the testatrix as to her intentions. And in any event, the law is well established that in construing a will, the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed in the language of the will, the issue before the court being, always, not what the testator meant to do or what he intended to declare in his will or what words he meant to use therein, but what he meant by what he did declare therein and by the words he actually used in his will (*Estate of Major,* 89 Cal. App. 238 [264 Pac. 542] ; *Estate of Ogden,* 78 Cal. App. 412 [248 Pac. 680]) ; and where, as here, the language of the will is clear and unambiguous, courts have no power to speculate as to the testator's intention. (*Estate of Hartman,* 21 Cal.

App. (2d) 266 [68 Pac. (2d) 744].) It follows, therefore, that even though the testimony as to said conversation be deemed competent, its exclusion was not prejudicial because the statements so made by the testatrix to said attorney, whatever they may have been, cannot be allowed to alter the unambiguous terms of the will.''

In the matter of the *Estate of Willson*, 171 Cal. 449 [153 Pac. 927], the rule is stated as follows: ''The rule is well established that where the meaning of the will, on its face, taking the words in the ordinary sense, is entirely clear, and where no latent ambiguity is made to appear by extrinsic evidence, there can be no evidence of extrinsic circumstances to show that the testatrix intended or desired to do something not expressed in the will. Where, in such cases, taking the words of the will alone, the intent is clear, that intent must be followed, and proof that the testatrix desired some other results or that the circumstances were such that such desire might be inferred, is inadmissible. (2 Underhill on Wills, sec. 548.) The following decisions of this court affirm the ·rule above stated: *Estate of Young*, 123 Cal. 337, 342 [55 Pac. 1011]; *Estate of Tompkins*, 132 Cal. 173, 176 [64 Pac. 268]; *Estate of Fair*, 132 Cal. 523, 532 [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]; *In re Walkerly's Estate*, 108 Cal. 627, 659 [49 Am. St. Rep. 97, 41 Pac. 772]; *In re Schedel's Estate*, 73 Cal. 594, 597 [15 Pac. 297]; *Rhoton v. Blevin*, 99 Cal. 645, 648 [34 Pac. 513]; see, also, 2 Words and Phrases, p. 1128, where many additional cases are cited.''

There is nothing in the language of the Bushell will which renders it ambiguous. The learned judge who signed the decree of distribution could not, from the language of the will, decree that ''next of kin'' meant that an unadopted person, a grandniece of the testator's wife, who was taken into the home of the niece of the testator's wife (not being the child of the niece of the testator's wife and which fact was known to the testator) was the ''next of kin'' of the niece of the testator's wife even though in the will this unadopted person (a stranger in blood to the testator, the testator's wife and the testator's wife's niece) was referred to as ''Maude A. Dobinson, Niece'' under a heading entitled ''Relatives and Friends''. There was no reference in paragraph ''Fifth'' of the will stating that ''Maude A. Dobinson,

Niece'' (mentioned in paragraph ''Third'' of the will) was to inherit as a ''next of kin'' of any of the beneficiaries.

If the learned trial judge in the decree of distribution construed ''next of kin'' (as mentioned in the will) to be ''the children and issue of the blood of such decedent or decedents by right of representation'', that construction, even if not in accord with the decision of the Supreme Court in the case of *Dickey* v. *Walrond*, 200 Cal. 335 [253 Pac. 706], would not affect the situation as to Maude Dobinson Emsley.

The fact that Alfred Dobinson assigned all his right, title and interest to the respondent (his deceased wife's niece, Maude A. Dobinson Emsley) is immaterial. The decree of distribution is binding on Alfred Dobinson and is *res adjudicata* until the same is set aside.

Respondent's contention here is that the decree of distribution should be construed with reference to the will; that the decree should be reformed to accord with the terms of the will and the extrinsic evidence offered on the trial; and that the evidence (including the extrinsic evidence) is sufficient to support the finding of the trial court hereinabove referred to.

If respondent's contention that the oral testimony introduced upon the trial as to the decedent's intention is correct, the decedent intended that Alfred Dobinson should take no part of the trust income in the event of Minnie Dobinson's death before the trust terminated.

However, the case was tried on the theory that Maude Dobinson Emsley was intended to take as a ''child'' and there was no issue presented to the trial court that Alfred Dobinson (under the will) took Minnie Dobinson's share or a part thereof as ''next of kin''.

There was no issue presented to the trial court that the decree of distribution should be reformed to conform to the will and that ''next of kin'' included Alfred Dobinson under the will the same as if the wording in the will stated ''heirs'' instead of ''next of kin''.

The case of *Estate of Cowden*, 10 Cal. App. (2d) 481 [51 Pac. (2d) 1165], is cited by respondent as authority for the rule that technical rules of construction ''may be applied to support but not to defeat such intention''. An examination of this case shows that the testatrix left a will providing

in part: "To my brother E. C. French the sum of two hundred dollars & my clothing & personal property. To my stepchildren by my husband Forbes C. Cowden I bequeath the rest of my estate both real & personal & wherever situated share and share alike." There were some bonds valued at about $1500. The brother contended the will gave him all the personal property. The court held the brother should be limited to the "personal effects of the deceased" on authority of *Estate of Norrish,* 135 Cal. App. 166 [26 Pac. (2d) 530] and *Estate of Combs,* 136 Cal. App. 286 [28 Pac. (2d) 711], and that decedent having also mentioned "to my stepchildren . . . I bequeath the rest of my estate both real and personal", the second bequest was in just as clear terms as the first one. There was no extrinsic evidence in this case. The trial court decided the matter upon the conflicting bequests of "personal property", giving effect to all the provisions of the will.

In the case of *Estate of Kessing,* 123 Cal. App. 119 [10 Pac. (2d) 1015], cited by respondent, the deceased made "special bequests to her sister, to three named cousins, to three brothers of her deceased husband, to her 'nephew' Ivan Kessing, who was in fact a nephew of her deceased husband" and others. The fifth clause stated "whatever of my estate is left is to be divided among these my cousins and others relations mentioned above". The sixth clause provided that the remainder of the estate should go to "my sister and my cousins and my nephew, Ivan Kessing of Berkeley, California, share and share alike". The three brothers of the deceased husband contended they were included in the other relations mentioned in the fifth clause. The court held they were not, as they were not relations "mentioned above"; that the fifth and sixth clauses covered the same persons, and that these three brothers of the deceased husband could not recover. It will be noted that in the sixth clause the will stated "my nephew, Ivan Kessing" (naming him and his residence), although he was a nephew of her deceased husband.

In the instant case the will did not mention "Maude A. Dobinson" along with the "next of kin" of any of the beneficiaries. In other words, to bring the instant case within the rule laid down in *Estate of·Kessing, supra,* and like cases,

the will should have mentioned Maude A. Dobinson, so as to include her as having equal rights with "next of kin", she being a stranger to the blood of Minnie Dobinson and not an adopted child.

The case of *Estate of Peabody,* 154 Cal. 173 [97 Pac. 184], cited by respondent, states: "Certain rules of interpretation applying particularly to wills and established by the authorities and by the Civil Code have an important bearing on the construction of this will. The important thing is the intention of the testator. (Sec. 1317.) This is to be ascertained from the words of the will, taking into view the circumstances under which it was made (sec. 1318). All parts of the will are to be considered in relation to each other so as to form, if possible, a consistent whole (sec. 1321). Words are to be taken in their ordinary grammatical sense, unless a clear intent to use them otherwise is apparent and that sense can be ascertained (sec. 1324). Technical words are not to be taken in their technical sense if it satisfactorily appears that the will was drawn solely by the testator and that he was unacquainted with such technical sense (sec. 1328). 'A technical construction of words and phrases, although *prima facie* the one which should prevail, will not go to the extent of defeating any obvious general intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulas.' (1 Redpath on Wills, p. 435, sec. 22. See, also, *Estate of Bennett,* 134 Cal. 320, 322 [66 Pac. 370]; *Richardson* v. *Noyes,* 2 Mass. 56, 60 [3 Am. Dec. 24]; *Homer* v. *Shelton,* 43 Mass. 198; *Brimmer* v. *Sohier,* 55 Mass. 129; *Carr* v. *Green,* 2 McCord, (S. C.) 75, 84; *DeKay* v. *Irving,* 5 Denio, (N. Y.) 646.)"

In the Peabody case the will was written entirely by the testator in her own hand. The court held that the word "transfer" should not be held to come within the rule in the Fair case because the will construed in the Fair case was drawn with great care, in language of definite technical significance, by some person skilled in law and in the use of legal technical terms, and the intention to vest the title to the real property in trustees, to be afterwards conveyed by them to the remaindermen, was so clearly and accurately expressed that no other interpretation was possible. The court in that case states (132 Cal. 523, 530; 84 Am. St. Rep. 70; 60 Pac.

442; 64 Pac. 1000) : "It is perfectly clear, beyond even a reasonable doubt, that the testator did *not* intend to devise estates in remainder to persons of the named classes, but intended to devise the whole fee to his trustees, upon trusts to convey, after the expiration of a probably very long period of time, to those persons, so that the latter would receive new estates created by the conveyances."

This case is not helpful in the instant case. The intention of the testator Bushell was expressed in unambiguous terms in the will and the decree of distribution follows the terms of the will. As expressed in the will "in the event of either of beneficiaries death, his next of kin shall take his share, when the trust terminates the remainder shall go to my next of kin then living". In the decree of distribution it provided that if any beneficiary died, the income from the trust "shall be paid to the children and issue of the blood of such decedent or decedents living", etc. The codicil, dated July 3, 1924, revoked the bequest to his next of kin then living (his heirs), and bequeathed the same to the West Oakland Home for the erection and maintenance of a home for homeless children, to be known as the Annie E. and E. A. Bushell Home for Homeless Children. The testator Bushell had legal advice when he consulted attorney Joseph W. Bingaman, and he (the testator), did not tell his attorney Joseph W. Bingaman (a personal friend of the Bushell family who believed that Maude A. Dobinson was a daughter of Minnie Dobinson and Alfred Dobinson), that she (Maude A. Dobinson) was not such a natural daughter or even an adopted child of Minnie and Alfred Dobinson.

In the case of *Bacon* v. *Bacon,* 150 Cal. 477 [89 Pac. 317], cited by respondent, the will of the deceased, Henry D. Bacon, contained the following provision: "If my said estate is worth as much as two hundred and fifty thousand dollars, at my death after payment of liabilities as aforesaid I desire that my legal representatives shall pay to the wife of my said son Frank the sum of ten thousand dollars and to the husband or husbands of my said daughters Ella Etta and Carrie Jennie each the sum of ten thousand dollars." The will was admitted to probate on March 13, 1893. Shortly after the testator's death, and before the will was probated, the children and the other parties interested, except the

plaintiff, met for the purpose of reading the will. In reading it, by mistake the word "ten" was read as "two" where it occurs in the above-quoted clause. This mistake was carried into all the subsequent proceedings, was not perceived by any of the interested parties or any person concerned in the administration, the respective legacies were paid as legacies of two thousand dollars each, and that sum was accepted and receipted for as payment in full by the plaintiff, all parties then believing that the legacies were each for two thousand dollars only, and a petition for distribution was thereafter filed, notice thereof duly given, and a decree of final distribution of the estate made on December 18, 1896, reciting the said legacy as a legacy for two thousand dollars. In a well-considered opinion the court states in part: "It is urged that the power to review judgments extends only to cases where they have been procured by fraud, and that it does not exist with respect to a judgment wrongfully given by reason of mistake either of the court or of the injured party. No such distinction is recognized by the authorities. The text-books all declare that such relief can be given where the former judgment was the result of a mistake unmixed with fraud, and not the result of the negligence of the injured party."

.   .   .   .   .   .   .   .   .   .   .   .   .

" 'It may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of equity. On the other hand, it may with equal safety be laid down as a general rule, that a defense cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of that court that the defense ought to have been sustained at law.'

"We are satisfied that the court below had power to entertain the suit and give the relief awarded by the judgment appealed from. It remains for us to consider the case upon its merits.

"A photographic copy of the will is inserted in the record. Upon a casual reading a person of ordinary skill in decipher-

ing penmanship might easily mistake the word 'ten', in the two places where it appears therein, for the word 'two', and believe that the legacies were each for two thousand dollars. But upon a careful reading, and especially upon a comparison with the formation of the same letters in other parts of the will, and without the aid of a microscope, no person of experience could doubt that the word is 'ten', and that the legacies are each for ten thousand dollars and not for two thousand dollars. Without doubt the testator did bequeath to the plaintiff a legacy of ten thousand dollars. The original will was filed and probated as it was written by the testator, and, consequently, the estate exceeding $250,000, the probate of the will clearly established that the plaintiff was entitled to a legacy of ten thousand dollars.

"At the time of the first reading of the will, when the words 'ten' were erroneously read by all parties present as 'two', the attorney of the executors was present, and was directed by them to have typewritten copies of the will made and sent to the parties interested. This was immediately done, the copyist by mistake writing the amount of the legacy as 'two thousand dollars'. Thereafter these copies were used in the subsequent proceedings, and the original will was not again carefully read or examined by any person until some three years after the estate was distributed. Thus the mistake was perpetuated and repeated in the final decree. The plaintiff did not expect that any legacy would be left to her, and did not know that anything was given to her by the will, until she was informed by her husband shortly after the first reading thereof. He told her that it gave her a legacy of two thousand dollars. A day or two later she received the copy from the executors which gave her the same information. She had every reason to believe that the information was correct. It came from those on whom she had a right to rely. We may presume that she had been accustomed to rely on her husband, and had found him trustworthy. She did rely on them, and believed that the legacy was in fact two thousand dollars, and during the whole course of the administration she had no occasion for even a suspicion that it was otherwise. Under these circumstances the court properly found that she cannot be charged with neglect in failing to discover the mistake.

"Furthermore, the information came from persons occupying fiduciary relations toward her. Her husband first informed her, and she then received the copy from the executors. Afterwards, and before the petition for distribution was filed, upon her request for payment of the supposed balance of her legacy, the individual defendants in their representative capacity, prepared a receipt in full, in effect stating therein that the balance of the principal of her legacy was but fifteen hundred dollars (five hundred dollars having been previously paid), which they presented to her and demanded that she should sign upon payment of said balance, which she did, and the supposed balance was then paid by them to her. This was equivalent to a statement by them that her legacy was but two thousand dollars. Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary. (1 Story's Equity Jurisprudence, sec. 218; *Robins* v. *Hope*, 57 Cal. 493, 497.) They were also residuary legatees, and hence whatever was lacking in full payment to the plaintiff was so much gained to them. They are therefore not in any position to claim that the plaintiff, in relying on their own statements regarding the amount of the legacy, was lacking in diligence.

"At the hearing of the petition for distribution the original will, in the handwriting of the testator, was on file, but it was not produced, examined, or read by or to the court. The petition was prepared from one of the typewritten copies of the will. It stated the legacy as of two thousand dollars, and that it had been fully paid. This statement was read or stated to the court by the attorney for the executor and executrices, and he also then stated that it was a correct statement of the contents of the will. The court accepted his statement as true and gave judgment for distribution accordingly. That all parties concerned, including the court, were acting under the influence of the mistake is unquestionable. It is claimed that it is not extrinsic or collateral to the case that the amount of the legacies and the purport and effect of the will were the precise things which the court was to ascertain and determine by the judgment, and that the mistake in reading the will was a mistake of the court,

intrinsic to the action, which cannot be reviewed in any other court.

''If the plaintiff had been present at the hearing, contending that the will gave her ten thousand dollars, had presented the point to the court, and the court had thereupon read the word 'ten' as 'two', and had made the distribution as it was made by the judgment appealed from, no doubt she would be precluded from any relief by way of equitable review, no matter how plain the mistake of the court would appear. The mistake would then be a mere error in the consideration of the evidence in a case fully presented to the court, an error of the class which human tribunals are subject to in any case, and which cannot be reviewed in equity. There would also be a complete remedy at law. The party injured would have timely notice of the error and could pursue the usual mode of review by motion for a new trial and appeal.''

.    .    .    .    .    .    .    .    .    .    .    .    .    .

''The action was not barred by the statute of limitations. The plaintiff had no actual knowledge of the mistake prior to the distribution, nor until the accidental discovery, shortly before the action was begun. The statute did not begin to run until that discovery occurred. The causes which produced the cessation of the intimate relations between plaintiff and the defendants did not put plaintiff upon inquiry to the extent necessary to charge her with constructive notice of the mistake prior to the actual discovery. The differences between them, as we have stated, would not necessarily affect her confidence in the honesty and integrity of the defendants in respect to the administration of the estate.''

.    .    .    .    .    .    .    .    .    .    .    .    .    .

''The will was competent evidence to prove the mistake, the right of the plaintiff, and the injury to her from the erroneous distribution. Decisions holding that a will is not admissible to collateral inquiry, after probate and distribution, to prove that it was disregarded, or incorrectly construed, by the court in making distribution of the estate, have no application here. This is not a collateral attack on the decree of distribution. It is a direct attack thereon. (*Bergin* v. *Haight*, 99 Cal. 52, 56 [33 Pac. 760].) In such direct proceedings to impeach the decree the will is competent evidence to prove the error and the injury. It is un-

necessary to discuss the other errors of law assigned. They are either not well taken, or they do not affect the result.''

The case of *Bacon* v. *Bacon, supra,* is not in point. There was no mistake made in the instant case in probate proceedings in the reading of the language of the will.

The case of *Pico* v. *Cohn,* 91 Cal. 129 [25 Pac. 970, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336], also cited by respondent, holds that to authorize a court of equity to set aside and annul a former judgment on the ground of fraud in its procurement, the fraud must be extrinsic or collateral to the questions examined and determined in the action, and must have prevented a fair submission of the controversy, and the judgment will not be vacated merely because it was obtained by forged documents or perjured testimony, or by bribing a witness to swear falsely. (See, also, *Sullivan* v. *Lumsden,* 118 Cal. 664 [50 Pac. 777].) In this regard it will be noted that in the decree of distribution of the Bushell will, it was determined that in the event Minnie Dobinson died the income in question ''shall be paid to the children and issue of the blood by right of representation'' of Minnie Dobinson.

■ The parol evidence rule is not only a rule of evidence but one of substantive law. If such evidence is admitted upon the trial, it may be urged on appeal that such evidence should be disregarded. Even if the evidence is allowed without objection, the same rule applies. (*Fogler* v. *Purkiser,* 127 Cal. App. 554 [16 Pac. (2d) 305].)

In the instant case the parol evidence was allowed over the objection of the appellants, and we believe the same was inadmissible. There is no mention in the will that Maude A. Dobinson was the ''child'' of Minnie Dobinson. Maude A. Dobinson is mentioned in the will only as ''niece''. The admitted facts show that Maude A. Dobinson was not adopted and that the testator Bushell knew that fact when he executed the will. She was not entitled to inherit the estate of Minnie Dobinson. (*Estate of McCombs,* 174 Cal. 211 [162 Pac. 897].)

Maude A. Dobinson was not ''next of kin'' of Minnie Dobinson. The record shows that the testator knew that she was not the ''daughter'' of Minnie Dobinson although she was treated as a ''child'' of Minnie Dobinson and was known

as the "daughter" of Minnie Dobinson, and that she (Maude A. Dobinson) believed she was the "daughter" of Minnie Dobinson.

The cases of *Bacon* v. *Bacon, supra, Pico* v. *Cohn, supra,* and other cases relied upon by the respondent are not in point. In *Bacon* v. *Bacon, supra,* the language of the will was "ten" instead of "two" and mistaken typewritten copies of the will were used in the probate proceedings. In the will in the instant case the language of the will is clear and unambiguous. The intent of the testator is clearly expressed in the will. (*Estate of Bourn, supra.*) There is no fraud, extrinsic or collateral, to the questions examined and determined in the probate court of the Bushell will. The most that can be said in respondent's favor in the instant case is that the testator concealed from attorney Joseph W. Bingaman (the attorney for the testator, the family friend of the testator and the Dobinsons and who believed that Maude A. Dobinson was the natural child of Minnie Dobinson and Alfred Dobinson) the fact that Maude Dobinson was not the natural child of Minnie Dobinson and Alfred Dobinson, and that he (the testator) made a mistake in the execution of the will on account of the advice given to him by attorney Joseph W. Bingaman. Proof of this fact is inadmissible under the authority of *Estate of Bourn, supra, Estate of Willson, supra,* and other authorities cited.

Without the assistance of the parol evidence admitted on the trial in the instant case, there is no competent evidence legally sufficient to support the findings of the trial court above mentioned.

We are of the opinion that Maude Dobinson Emsley under the will and decree of distribution has no interest whatsoever in the one-sixth income from the said trust fund which Minnie Dobinson would be entitled to if she were living.

The judgment of the lower court is reversed, with directions to the lower court to enter judgment in favor of appellants.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 30, 1938, and an appli-

cation by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1939.